IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LACUNYA HODGES,** on behalf of herself
and all other similarly situated                                             **PLAINTIFF**

VS.                                              CIVIL ACTION NO.: 4:25-cv-92-DMB-JMV

**ADMINISTRATIVE SYSTEMS, INC., et al.**                        **DEFENDANTS**

**ORDER REQUIRING FURTHER BRIEFING**

This Order is made to require further briefing on the Plaintiff's motions to lift the stay of discovery [Doc. 69, 73], Defendants' responses in opposition [Doc. 80, 86], and Plaintiff's replies [Doc. 91, 92]. Further briefing is necessitated for the reasons discussed below.

**Procedural Status**

This action was filed by Plaintiff on June 23, 2025. [Doc. 1]. It is brought as a collective action pursuant to 29 U.S.C. § 216 on behalf of the following:

All current and former hourly, nonexempt employees of Defendants who earned incentives for picking up an extra shift, shift differentials, or sign-on bonuses during weeks he or she worked more than forty hours….and were improperly paid overtime under the Fair Labor Standards Act. ("FLSA"),

Plaintiff is a citizen of Mississippi residing in Coahoma County where she was at all times relevant herein employed by Care Givers, LLC, ("Care Givers") a limited liability company (LLC) organized in Mississippi and offering nursing home services at its sole facility in Flowood, Mississippi. Care Givers is alleged to be one of 17 different Mississippi LLCs who each own and operate a different nursing home in Mississippi and who have each been named a defendant to this action ("Mississippi nursing homes"). In addition, Plaintiff also names as defendants 25 other

1

Louisiana LLCs, each of whom own and operate a different nursing facility in that state ("Louisiana nursing homes"). Plaintiff asserts that each of the Mississippi and Louisiana nursing homes is "owned operated and managed" in whole or in some part by members of what is described as the "Beebe family", associates of the family (i.e. non-family members hired by the family), and/or trusts with some relationship to the family.[1] In addition, Plaintiff names Administrative Systems, Inc., a Mississippi corporation she alleges provides administrative and payroll services, including the computation and payment of overtime to each of the Mississippi and Louisiana nursing home LLCs. Plaintiff also names Medico LLC, whom she alleges performs Human Resources related functions for the Mississippi and Louisiana nursing homes, as well as serving as a 401(k)-plan sponsor in which all the nursing home LLCs participate (hereinafter ASI and Medico are sometimes referred to as the "non-nursing home Defendants").

In a nutshell, Plaintiff alleges, variously, that despite the fact of their being separate legal entities, all of the Defendants are one large company that is owned, managed, and controlled by the Beebe family or those the family has hired; that Defendants are joint employers of Plaintiff; and/or they area a unified, integrated business or enterprise. Among other indicia, Plaintiff alleges the Defendants shared offices, principal places of business, officers, managers, and directed the work concurrently and jointly of Plaintiff and all other hourly, nonexempt employees of Defendants.

On September 2, 2025, all nursing home Defendants, other than Care Givers, LLC, and the non-nursing home Defendants (these entities are sometimes collectively referred to herein as the "moving Defendants") moved to dismiss the Complaint for lack of subject-matter jurisdiction

---

[1] Neither the membership nor the citizenship of each LLC Defendant has been provided.

2

under Federal Rule of Civil Procedure 12(b)(1) and, as for the Louisiana nursing home defendants, also for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

The moving Defendants base their 12(b)(1) subject matter jurisdiction motion on a lack of standing.[2] Their argument has two bases. First, they assert that Plaintiff has no constitutional standing under Article III[3] over her claims, as Plaintiff has not alleged, and cannot show, any specific action by a particular nursing defendant, aside from her employer, Care Givers, that caused her purported injuries, and therefore, she has not alleged an injury that is fairly traceable to any of the Defendants moving to dismiss. Rather, the moving Defendants assert that their declarations offered in support of their motions to dismiss establish they had no connection with, and exercised no control over, Plaintiff or her employment with Care Givers. Second, the moving Defendants argue Plaintiff cannot establish statutory standing to bring claims against them under the FLSA because the FLSA only allows a cause of action against her employer, in this case, Care Givers, and Plaintiff's allegations of a joint or unified enterprise are insufficient to establish the necessary employment relationship between Plaintiff and any Defendant, other than Care Givers.[4]

---

[2] Standing is evaluated at the time the Complaint is filed, and as the party invoking federal jurisdiction, it is Plaintiff's burden to establish the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[3] Generally, to establish Article III standing, Plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). Stated differently, but to the same effect, "[A] named plaintiff in a collective action adequately pleads standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him." *Joaquin v. Coliseum Inc.,* No. A-15-CV-787-LY, 2016 WL 7352006, at *2 (W.D. Tex. Dec. 19, 2016).

[4] Generally, statutory standing is predicated on the existence of an employer-employe relationship. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C.§ 206). The named plaintiff cannot maintain a collective action on behalf of a class of potential opt- in plaintiffs against a defendant that the named plaintiff cannot show was her employer. *See Lucas*, 2010 WL 2671305, at *2-3. Rather, Plaintiff must show that each Defendant against whom she has brought an FLSA claim was her employer, not just show that the Defendant will be some class member's employer. *See id.* at *4 n.7; *Cavallaro*, 971 F. Supp. 2d at 146-48. Mere corporate relationship between one defendant entity and another responsible for an injury does not establish standing. *Lucas*, 2010 WL 2671305, at *3 n.8. Plaintiff must establish an employment relationship with each Defendant entity. *Id.*; *Howard v. John Moore, L.P.*, 2014 WL 5090626, at *4 (S.D. Tex. Oct. 9, 2014).

Whether an entity is an employer for purposes of the FLSA turns, generally, on the "economic reality" of the working relationship. *Goldberg v. Whitaker House Co–op., Inc.*, 366 U.S. 28, 33 (1961). In the Fifth Circuit, courts use a multi-factor "economic reality" test to evaluate whether there is an employer-employee relationship under the FLSA, which considers, generally, whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or employment conditions; (3) determined the rate and method of payment; and (4) maintained employment records.[5] *See, e.g.,* W*illiams v. Henagan,* 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990); *Itzep v. Acad., Ltd.*, 2012 WL 1965669, at *2 (W.D. Tex. May 30, 2012), *report and recommendation adopted,* 2012 WL 13148766 (W.D. Tex. July 3, 2012). And, where there may be more than one employer, the court "must apply the economic realities test to each individual or entity alleged to be an employer, and each must satisfy the four-part test." *Graves*, 909 F.2d at 1556.

The moving Defendants contend that an "enterprise" theory among entities is insufficient to establish statutory standing under the FLSA. *See Lucas*, 2010 WL 2671305, at *3 n.8 ("Although the . . . defendants may be a part of a common enterprise with plaintiffs' employer or employers, FLSA liability is predicated only on an employee-employer relationship, not on defendants' involvement in a common enterprise.") (citing *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. . . . Liability is based on the existence of an employer-employee relationship.")). "Separate corporate entities may operate through a unified operation or under common control, but that does not necessarily mean that each corporation in the enterprise stands in the position of

---

[5] The absence of one factor is not necessarily dispositive, but the absence of all factors is fatal to the inquiry. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).

4

plaintiff's employer." *Howard*, 2014 WL 5090626, at *4 (citation omitted). In the FLSA context the enterprise concept applies only to the question of whether a named defendant is sufficiently large to be governed by the FLSA. The finding of an enterprise is relevant only to the issue of FLSA coverage, not statutory standing. *Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 267 (11th Cir. 2011) (citing *Patel*, 803 F.2d at 637). In short, Defendants contend Plaintiff fails to offer any factual basis, consistent with the economic realities test, to allow the reasonable inference that Plaintiff has standing to assert a claim under the FLSA against any of the Defendants, other than Care Givers.

In opposition, Plaintiff asserts she has Article III and statutory standing inasmuch as the FLSA's definition of "employer" is broad, including any "organized group of persons" acting "directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d). And, Plaintiff asserts that she has alleged that all Defendants operate as a "unified, integrated business" that is "owned, managed, and controlled by the Beebe family." This unified operation, she contends, collectively manages the nursing homes and determine employee pay policies. [Doc. 1, ¶¶ 50, 57, 98-101]. Therefore, she argues the alleged wrongful conduct—the improper calculation of overtime—is a product of the entire unified enterprise, not just a single entity.

She explains: The causal connection is established by the allegations of shared ownership and control, including: (1) common ownership and control by the Beebe family, and those they have hired [Doc. 1, ¶¶ 71-85]; (2) management of all nursing homes by "regionals" who report to upper management and administrators who either "work directly for or report to employees of ASI" [Doc. 1, ¶¶ 77, 94-95]; (3) the use of Mississippi companies, ASI and Medico, to provide "administrative and payroll services, including the computation and payment of overtime" to all MS Nursing Home Defendants [Doc. 1, ¶¶ 86-87, 90-91]; (4) shared

5

standardized employment forms, handbooks, and a common Corporate Compliance Officer, Toni Parkinson, who is also the President of ASI. [Doc 1, ¶¶ 99-100]. These facts, she contends, accepted as true, show that Plaintiff's injury is directly traceable to the collective and integrated actions of all Defendants and satisfies the economic realities test.

The Louisiana nursing home Defendants also argue a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Generally, Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to assert by motion that the court lacks personal jurisdiction. "If a party raises the defense of lack of personal jurisdiction, the non-moving party bears the burden of proving personal jurisdiction." *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014). A plaintiff bears the burden of establishing that a nonresident defendant is subject to personal jurisdiction by satisfying the forum state's long-arm statute and by demonstrating the nonresident defendant has established such minimum contacts with the forum state as is sufficient to satisfy the Due Process Clause of the 14th Amendment. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024); *Pekin Ins. Co. v. Hinton,* 192 So. 3d 966, 970-71 (Miss. 2016); The Fourteenth Amendment's Due Process Clause permits a Mississippi court to exercise personal jurisdiction over a nonresident only when: (1) that defendant has purposefully availed itself of the benefits and protections of Mississippi by establishing sufficient *minimum contacts* with the state; and (2) the exercise of jurisdiction over that defendant would not offend *traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

Minimum contacts can be established either through contacts sufficient to assert specific jurisdiction or contacts sufficient to assert general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). The party seeking to invoke the Court's jurisdiction—in this case, Plaintiff— "bears the burden of establishing that a defendant has the requisite minimum contacts with the

forum state to justify the court's jurisdiction." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013). Specific jurisdiction over a nonresident defendant is appropriate when the defendant has purposefully directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citation omitted). General jurisdiction, on the other hand, attaches when the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are continuous and systematic such that the defendant may be said to be "at home in the forum state." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)).

Even if a nonresident defendant has sufficient contacts with the forum state to satisfy the applicable long-arm statute and the Fourteenth Amendment's Due Process Clause, the Court must still determine that the exercise of jurisdiction would be fair and reasonable and must not offend traditional notions of fair play and substantial justice. *See Wilson*, 20 F.3d at 647; *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 418 (5th Cir. 2001) (citing *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113–14 (1987)). Courts examine five (5) factors for this inquiry: "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). Mississippi's long-arm statute authorizes personal jurisdiction over a nonresident defendant in three situations: if the defendant (1) makes a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; (2) commits a tort in whole or in part in

7

Mississippi; or (3) conducts any business or performs any character of work in Mississippi. Miss. Code Ann. § 13–3–57.

Based on the motions to dismiss alleging lack of subject matter and personal jurisdiction, Local Uniform Civil Rule 16(b)(3)(B) was triggered, which states that "[f]iling…a jurisdiction defense motion stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal." The local rule also states, "Whether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief." *Id*. In compliance with the Local Rule, the undersigned stayed this matter on September 3, 2025.

On September 4, 2025, Plaintiff moved to lift the discovery stay by virtue of two motions— one addressed allowing discovery of defendants, and one addressed allowing issuance of subpoenas to financial institutions.[6] [Doc. 69, 73]. No proposed discovery requests or proposed subpoenas have been provided. Instead, Plaintiff references general discovery on an array of general topics, such as the "issues of corporate structure, shared management, administrative services, and operational control," including multiple proposed depositions of the "key declarants – such as Jeffrey Schmitt, Toni Parkinson, and David Stallard – to determine the full extent of their ties to the Mississippi-based facilities within the alleged enterprise." [Doc. 70] at 8-9.

Defendants opposed Plaintiff's Motions for Jurisdictional Discovery via multiple filings. *See* [Doc. 78, 79, 80, 81, 82, 83, 84, 85, 86, and 87].[7] Defendants contend Plaintiff's lack of standing cannot be cured by her requested discovery. Defendants argue that Plaintiff has not, and

---

[6] Plaintiff also asked that the stay of discovery against Care Givers be lifted, as that party faces no jurisdictional challenge. The issue of discovery as to Care Givers will be addressed in a separate opinion.
[7] Defendants also opposed lifting the stay of general discovery of Care Givers for reasons unrelated to jurisdiction. Plaintiff replied on September 25, 2025, in support of both of her motions to lift stay. *See* [Doc. 91, 92].

8

cannot, identify any connection whatsoever between herself and any of the moving Defendants, much less any exertion of control over her employment by these Defendants. Defendants further argue that Plaintiff's request for broad, intrusive, and costly jurisdictional discovery is merely a fishing expedition and delay tactic.

As the United States District Court for the Western District of Louisiana recently discussed in *Stream Fam. Ltd P'ship v. Occidental Chem. Corp.*, 2025 WL 2807778, at *2 (W.D. La. Sept. 29, 2025):

> [W]hile a court should determine whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (citing *Eckstein Marine Serv., L.L.C. v. Jackson*, 672 F.3d 310, 319-20 (5th Cir. 2012)). **"The party seeking discovery must establish its necessity and does so by making 'clear which specific facts he expects discovery to find.'"** *Pace v. Cirrus Design Corp.*, **93 F.4th 879, 902 (5th Cir. 2024) (internal citations omitted) (citing *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021)). When this discovery is permitted, it must occur "on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity**." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004). As with all discovery matters, however, "the question whether to permit jurisdictional discovery is committed to the district court's discretion." *Daniels v. Bull Rogers, Inc.*, No. PE:17-CV-00053, 2018 WL 7297874 at *2 (W.D. Tex. Feb. 5, 2018) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)).

(emphasis added).

Further, "discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum v. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (denying discovery where **plaintiffs failed to "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction**")

(emphasis added); *see also, Brown v. Attala Steel Indus., LLC,* No. 4:23-CV-114-MPM-DAS, 2023 WL 6981788, at *2 (N.D. Miss. Oct. 23, 2023).

In accordance with the above, the undersigned requires the following additional briefing and proposed discovery in connection with the pending motions to lift the discovery stay. In doing so, I note I have no intention to decide anything other than whether discovery—and the extent of the same—will be permitted. Nevertheless, ascertaining whether Plaintiff has established that the discovery sought on jurisdiction (be it subject matter jurisdiction or personal jurisdiction) is indeed both factual and relevant on the subject is required in order that the undersigned properly ensures that any discovery allowed is narrowly tailored to address only relevant disputed jurisdictional facts. To aid the Court in doing so, I hereby request:

1) The Plaintiff shall file a supplemental brief addressing the specific issue of whether *personal* jurisdiction over the 26 LA defendants can—*as matter of law*—be premised on a finding that the LA defendants are her joint employers (vertical and/or horizontal), and/or that they form a unitary enterprise as those concepts are understood in relation to the FLSA. *See, e.g., McRunells v. Acadia Healthcare Co., Inc.*, No. CV 22-74-JWD-RLB, 2022 WL 7692159, at *3 (M.D. La. Oct. 13, 2022), and *Hamm v. Acadia Healthcare Co.*, No. 20-1515, 2021 WL 1212539 (E.D. La. Mar. 31, 2021) (where the court rejected the plaintiff's argument that Acadia, a non-resident corporation, "is subject to personal jurisdiction because it qualifies to be her joint employer under the FLSA.").

In *Hamm*, the United States District Court for the Eastern District of Louisiana reasoned as to the first theory, that there was "no Fifth Circuit case holding that joint employer status under the FLSA is a substitute for the minimum contacts test in determining whether a Court may exercise personal jurisdiction over an out of state defendant." *Id.* at *7. Further, on the first point, the court concluded, "'joint employer theory and similar concepts are relevant for determining

10

liability [as an employer under the FLSA], but are not for determining whether a court may exercise personal jurisdiction over a party.'" *Id.* (quoting *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012); *see also Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040, at *11 (D.S.C. July 25, 2019) (finding no personal jurisdiction over non-resident subsidiary in South Carolina where subsidiary Waste Pro Fl was a Florida Corporation with principal place of business in Florida; "there has been no evidence or even credible allegations that Waste Pro Fl has had any relationship with South Carolina relating to plaintiffs' claims"; and plaintiffs' joint employer/single integrated enterprise theory "cannot be relied upon to create personal jurisdiction").

2) As to the Plaintiff only, the supplemental brief shall also identify the *specific* facts Plaintiff seeks to discover to establish that there is personal jurisdiction in MS over each of the LA defendants, and what particular requirement for personal jurisdiction each fact(s) is/are claimed to be relevant to establishing. Your supplemental brief should include the proposed discovery request itself, whether in the form of an interrogatory, request for admission and/or request to produce, or third-party subpoena.

3) As to Plaintiff only, the supplemental brief shall also identify the specific fact(s) you seek to discover to establish standing (subject matter jurisdiction) of Plaintiff to sue each named defendant under Article III of the United States Constitution and/or under the FLSA statute, including what particular recognized economic reality factor(s) you seek to establish by the proposed discovery request with regard to each defendant, and what other recognized requirement for establishing subject matter jurisdiction, if any, you contend each fact will plausibly satisfy as to each defendant. Your supplemental brief should include the proposed discovery request itself,

whether in the form of an interrogatory, request for admission and/or request to produce, or third-party subpoena.

The supplemental brief of Plaintiff, including the proposed discovery, shall be filed within 14 days from date of the entry of this Order, or by November 3, 2025. Defendants will have 7 days after the filing of Plaintiff's brief to file a responsive supplemental brief on the legal issue outlined above, and in which to argue that any of the facts Plaintiff asserts are necessary to a jurisdictional determination are, in fact, not so and/or that the particular proposed request is not narrowly drawn to illicit such fact.[8]

**SO ORDERED** this, the 20th day of October, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[8] Defendants' opportunity to make "objections" to the proposed discovery, or otherwise respond thereto, will be allowed only once discovery, if any, is permitted.