## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**LACUNYA HODGES, on behalf of**
**herself and all others similarly situated**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO.: 4:25-cv-92-DMB-JMV**

**ADMINISTRATIVE SYSTEMS, INC., et. al.**                                    **DEFENDANTS**

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO LIFT STAY TO PROPOUND DISCOVERY AND TAKE DEPOSITIONS [Doc. 69] AND DENYING MOTION TO LIFT STAY TO SERVE SUBPOENA [Doc. 73]

This matter is before the court on Plaintiff Lacunya Hodges' motion to lift the stay [Doc. 69] to allow her to propound what is purported to be "limited jurisdictional discovery," but amounts to a collective 400+ interrogatories and approximately 390 requests for production to 26 separate corporate Louisiana defendants, and an additional collective 240 interrogatories and 200 requests for production to the remaining 18 Defendants, (hereinafter sometimes "non-LA defendants" or "Mississippi defendants")[1] for a total of 1,200+ discovery requests,[2] many of which include a labyrinth of subparts incorporated via a litany of complicated "definitions."[3]  In

---

[1] For purposes of this opinion, "non-LA Defendants" or "Mississippi Defendants" does not, except as expressly stated herein, include Care Givers LLC, a Mississippi LLC, as Care Givers did not join the active motions to dismiss on jurisdictional grounds. [Docs. 17, 18, 19].

[2] Discovery consists of a set of 20 interrogatories and 15 requests for production meant for the Louisiana defendants, and 12 interrogatories and 10 requests for production meant for the Mississippi defendants.

[3] By way of example, one proposed interrogatory to the non-LA Defendants [Doc. 98 – Exh. 2] reads "Identify any and all Employees, Services, Records, and Equipment [All Other Defendants] currently Shares or has Shared with any other named Defendant."

Plaintiff defines "employees" as "Executive directors or facility administrators; Regional administrators or area managers; Marketing or community relations staff; Human resources managers; Payroll and benefits administrators; Business office managers; Billing and collections staff; Accounts payable and receivable clerks; Dietary supervisors or regional dietitians; Maintenance supervisors; IT support staff; Compliance or risk management officers; Corporate training personnel; Legal counsel or compliance consultants; Regional staffing coordinators or schedulers"

Plaintiff defines "services" as "Legal and risk management services; Billing and reimbursement processing; Accounting and finance functions; Dietary menu planning and nutrition consulting; Purchasing and vendor contracting; Pharmacy services or medication supply arrangements; IT support, software licensing, and data management; EMR (Electronic Medical Record) systems and licenses; Marketing and admissions operations; Scheduling and staffing systems or shared agency relationships; Electronic mail (email) domains and services; Phone systems"

1

addition, Plaintiff seeks to take three depositions and, by separate motion to lift the stay, to serve two third-party subpoenas to institutions seeking expansive financial documents for an unlimited period of time.[4] [Doc. 73].

Plaintiff purports to seek such discovery to establish subject matter jurisdiction (i.e. that she has constitutional standing pursuant to Article III of the U.S. Constitution) to bring claims against each of these 44 defendants in order to defeat all of their 12(b)(1) motions to dismiss for lack of subject matter jurisdiction and to establish specific personal jurisdiction over the LA defendants in order to defeat their challenges pursuant to 12(b)(2).[5]

For the reasons addressed below, Hodges' motion to lift the stay to propound discovery and take depositions [Doc. 69] is granted in part and denied in part. The Court will permit only the

Plaintiff defines "records" as "Employee files and HR records; Payroll and benefits records; Training and certification records; Financial and accounting records; Corporate policies and procedures; Resident medical charts; Admissions and discharge records; Incident reports and grievance logs; Quality assurance documentation; Infection control reports; State survey or inspection reports; Vendor and contractor records; Invoices, purchase orders, and supply chain documents; IT and cybersecurity records; Corporate ownership and management agreements; Inter-facility transfer documentation; Marketing and admissions data (referrals, census, leads)"

Plaintiff defines "equipment" as "Medical and therapy equipment (e.g., lifts, wheelchairs, oxygen tanks); Diagnostic or monitoring devices (e.g., vitals machines, pulse oximeters); Computer servers or network hardware; PPE inventory or stockpiles; Telecommunication systems (shared lines, VOIP platforms, etc.); Centralized EMR or data management software licenses; Medical supply inventories or vendor accounts"

Plaintiff also states "When referring to persons, to "identify" means to give the name, the title, the last known residence address, the last known e-mail address and the last known business address of the person." and "When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s) and recipient(s), and (v) the last known location of the document and the identity of person who has possession of it."

[4] One such subpoena requests "all documents, electronically stored information, and tangible things in its possession, custody, or control that relate to, reference, or concern any loan agreements, financing arrangements, security agreements, or credit facilities …includ[ing] but not limited to… All executed loan agreements, promissory notes, credit agreements, security agreements, guarantees, and any amendments or modifications thereto. All correspondence, including emails, letters, memoranda, and internal notes, between Trustmark National Bank and the listed entities, their representatives, or any third parties, regarding the negotiation, execution, performance, or default of any Agreements. All documents submitted to [the Bank] by the listed entities in connection with the Agreements, including financial statements, corporate resolutions, business plans, and due diligence materials All drafts of any of the documents listed above."

[Doc. 98 – Exh. 3].

[5] Also pending is Defendants' motion to dismiss pursuant to 12(b)(6). In it, all Defendants besides Care Givers allege that only Care Givers is Plaintiff's employer, and as such, it is the only entity against whom she has statutory standing, a necessary element to state a claim under the Fair Labor Standards Act.

limited discovery specifically identified below. In addition, the motion to lift the stay to serve subpoenas [Doc. 73] is denied.

## **Background**

This already complicated, but still young, action against 45 separate entities for the alleged improper payment of wages to Plaintiff Hodges by Care Givers, LLC, who operates a nursing home facility in Clarksdale, Mississippi where she works, is set forth in a number of prior docket entries. *See* [Docs. 95, 96]. Accordingly, I will not reiterate that history here, except to point out that the current jurisdictional motions arise from the following:

On June 23, 2025, Hodges filed the instant FLSA complaint naming 45 separate corporate entities, who each, save two of the Mississippi Defendants,[6] operate a nursing home in a town or city in Mississippi or Louisiana. Hodges seeks, for herself, recovery from all Defendants of an alleged shortage of wages paid for her work at Care Givers, LLC.[7]

As noted, all Defendants, besides Care Givers, LLC, have filed jurisdictional motions to dismiss for lack of subject matter jurisdiction—in this instance, for lack of constitutional standing. The Louisiana Defendants have also each raised a lack of specific jurisdiction challenge. In support of their motions, each Defendant filed an accompanying declaration, which asserts, in essence, that aside from Care Givers, LLC, no other Defendant has any involvement in or control of Plaintiff's employment.

---

[6] Administrative Systems, Inc. and Medico, LLC
[7] Plaintiff also seeks to have a collective class of all similarly employed employees of each of the other nursing home defendants certified.

After these jurisdictional motions were filed and acting pursuant to Local Rule 16(b)(3)(B), the undersigned stayed the case management conference and any discovery in this case until resolution of the jurisdictional motions [Doc. 37].[8]

Hodges then moved to lift the stay "to conduct limited jurisdictional discovery." [Docs. 69, 73]. However, aside from mentioning a desire to take three depositions, undefined written discovery and to issue some vaguely described third party subpoenas, her motions did not recite what particular discovery she sought, insisting instead, generally, that she was entitled to take discovery of all Defendants because they were under common control of a particular family and that family's friends and hires[9] that constitute what Hodges describes variously as "an enterprise", "a common control employer" or a "joint employer." The Louisiana defendants, the Mississippi nursing home defendants, Care Givers, LLC, and non-nursing home Defendants each opposed the motion separately. [Docs. 80, 82, 84, 86].[10]

In regard to jurisdictional discovery, Fifth Circuit law directs that:

> "[W]hile a court should determine whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (citing *Eckstein Marine Serv., L.L.C. v. Jackson*, 672 F.3d 310, 319-20 (5th Cir. 2012))."[ Still,] **"[t]he party seeking discovery must establish its necessity and does so by making 'clear which specific facts he expects discovery to find.'"** ***Pace v. Cirrus Design Corp.***, **93 F.4th 879,**

---

[8] Local Rule 16(b)(3)(B) states that "Filing a motion to compel arbitration, or a motion asserting an immunity defense or jurisdictional defense, stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal. Whether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief."

[9] None of whom are named Defendants in this matter.

[10] By order dates October 22, 2025, the Court denied Plaintiff's discovery motion because Care Givers, LLC did not raise a jurisdictional challenge; thus, discovery to establish jurisdiction over Care Givers, LLC was not relevant. [Doc. 96]. To the extent Plaintiff also sought to otherwise conduct general discovery of Care Givers, LLC, this request was denied with a limited exception not relevant here. *Id*. As addressed *infra* p. 37, while the previous order remains in effect, the Court will permit by this order some limited discovery against Care Givers, LLC, not to establish jurisdiction over Care Givers, LLC, but to establish whether other Defendants have sufficient control over her employment with Care Givers, LLC so as to under the "economic reality test" be her employer for FLSA purposes.

> **902 (5th Cir. 2024) (internal citations omitted) (citing *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021)). When this discovery is permitted, it must occur "on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity."** *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).
>
> . . .
>
> [*See also,*] *Kelly v. Syria Shell Petroleum v. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (denying discovery where **plaintiffs failed to "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction.**")

*Hodges v. Admin. Sys., Inc.*, No. 4:25-CV-92-DMB-JMV, 2025 WL 2966884, at *5 (N.D. Miss. Oct. 20, 2025) (emphasis in original).

Following these instructions, the undersigned entered an order requiring supplemental briefing on, as relevant here, the necessary elements required to establish constitutional standing, that is, subject matter jurisdiction under Article III, and those relevant to establishing specific personal jurisdiction. [Doc. 95]. The undersigned also required Plaintiff to submit the discovery she contended was necessary and to explain what particular facts she sought to learn by virtue of the proposed discovery. Specifically, the Order [Doc. 95] required:

> Subject Matter Jurisdiction
>
> Identify the specific fact(s) you seek to discover to establish standing (subject matter jurisdiction) of Plaintiff to sue each named defendant under Article III of the United States Constitution …. including what particular recognized economic reality factor(s) you seek to establish by the proposed discovery request with regard to each defendant, and what other recognized requirement for establishing subject matter jurisdiction, if any, you contend each fact will plausibly satisfy as to each defendant. You…. should include the proposed discovery request itself, whether in the form of an interrogatory, request for admission and/or request to produce, or third-party subpoena.

5

Specific Personal Jurisdiction

The Plaintiff shall file a supplemental brief addressing the specific issue of whether *personal* jurisdiction over the 26 LA defendants can—*as matter of law*—be premised on a finding that the LA defendants are her joint employers (vertical and/or horizontal), and/or that they form a unitary enterprise as those concepts are understood in relation to the FLSA [citations omitted ] As to Plaintiff only, the supplemental brief shall also identify the *specific* facts Plaintiff seeks to discover to establish that there is personal jurisdiction in MS over each of the LA defendants, and what particular requirement for personal jurisdiction each fact(s) is/are claimed to be relevant to establishing. Your supplemental brief should include the proposed discovery request itself, whether in the form of an interrogatory, request for admission and/or request to produce, or third-party subpoena.

*Hodges*, No. 4:25-CV-92-DMB-JMV, 2025 WL 2966884, at *6 (N.D. Miss. Oct. 20, 2025).

Defendants were afforded an opportunity, should they elect to do so, to file a response to the proposed discovery if they believed it sought facts unnecessary to establishing jurisdiction or if it was not narrowly drawn to illicit such relevant facts.[11]

In response to the Order [Doc. 95], the Court received from Plaintiff, in addition to legal argument, the expansive proposed discovery referenced above. This proposed discovery is split into two groups, one directed towards the Louisiana Defendants [Doc. 98] - Exh. 1, and the other directed towards all Mississippi Defendants [Doc. 98] - Exh. 2.

The Defendants responded in opposition [Doc. 106].

The Law

As discussed above, where jurisdictional challenges are made, discovery, if permitted at all, is to be conducted only on a tight tether and it must be narrowly tailored. In other words,

---

[11] In my Order [Doc. 95], I instructed Defendants that their opportunity to make other objections to the proposed discovery or otherwise respond would be allowed only if discovery was first permitted.

Plaintiff, who is seeking discovery to support a claim of subject matter jurisdiction or personal jurisdiction, must seek only such discovery as is necessary to establish facts that, according to the applicable law, are relevant on the issue of whether there is subject matter and/or personal jurisdiction over Plaintiff's assertion that she has a FLSA claim against each one of the named Defendants, excluding Care Givers, LLC. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024).

In the instant case, the moving Defendants contend Plaintiff has no constitutional standing—and therefore, this Court has no subject matter jurisdiction—over her claims against them. Constitutional standing under Article III of the United States Constitution requires the Plaintiff show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, i.e. that the injury be "fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court', and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). Stated differently, but to the same effect, "[A] named plaintiff in a collective action adequately pleads standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him" *Joaquin v. Coliseum Inc.,* No. A-15-CV-787-LY, 2016 WL 7352006, at *2 (W.D. Tex. Dec. 19, 2016). At the pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Warth v. Seldin*, 422 U.S. 490, 490 (1975).

In the Fifth Circuit, courts use a multi-factor "economic reality" test to evaluate whether there is an employer-employee relationship under the FLSA sufficient to support a contention a particular defendant caused a plaintiff's injury. However, the parties do not agree what specific factors should be considered.

Defendants cite to the "4 factor economic reality test" as applicable to each putative or alleged employer. This test asks whether a putative or alleged employer of the Plaintiff (here, those being each one of the 46 corporate Defendants), (1) had the power to hire and fire the employees Care Givers, LLC, including Plaintiff; (2) supervised and controlled her work schedules or employment conditions at Care Givers, LLC; (3) determined her rate and method of payment for work she performed at Care Givers, LLC; and (4) maintained Plaintiff's employment records. *See* W*illiams v. Henagan,* 595 F.3d 610, 620 (5th Cir. 2010); *Itzep v. Acad., Ltd.*, 2012 WL 1965669, at *2 (W.D. Tex. May 30, 2012), *report and recommendation adopted,* 2012 WL 13148766 (W.D. Tex. July 3, 2012); *see also Watson v. Graves*, 909 F.2d 1549, 1556 (Where there may be more than one employer, the court "must apply the economic realities test to each individual or entity alleged to be an employer, and each must satisfy the four-part test.")[12]

Plaintiff insists other factors may also speak to whether a putative employer is, in economic reality, plaintiff's employer. Specifically, Plaintiff cites to the following (though some redundant) factors, including "degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required," *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976); "whether or not the employment takes place on the premises of the company; How much control does the company exert over the employees; Does the company have the power to fire, hire, or modify the employment condition of the employees; Do the employees perform a 'specialty job' within the production line; and may the employee refuse to work for the company or work for others?" *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968).

---

[12] There is no requirement that all four factors be present to satisfy an employment relationship. "No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Hopkins v. Cornerstone Am*., 545 F.3d 338, 343 (5th Cir. 2008). Each element must not be present in every case but finding employer status when none of the factors is present is incorrect as it would render the test "meaningless". *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

Plaintiff contends a sufficient employment relationship to establish Article III standing may be found to exist between a given defendant and a FLSA plaintiff's employer (in this case, Care Givers, LLC) when each are part of a "unitary enterprise" or "under common control." However, in the Fifth Circuit, the concepts of "unitary enterprise" and "common control" speak generally—not to whether there is an employment relationship between the named plaintiff and any defendant—but to whether the defendant's employer is of sufficient size to be covered by the FLSA, not, itself, a matter of subject matter jurisdiction. *Lucas v. BMS Enters., Inc.,* No. 309-CV-2159-D, 2010 WL 2671305, at *3 n.8 (N.D. Tex. July 1, 2010) ("Although the . . . defendants may be a part of a common enterprise with plaintiffs' employer or employers, FLSA liability is predicated only on an employee-employer relationship, not on defendants' involvement in a common enterprise.") (citing *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)). "Separate corporate entities may operate through a unified operation or under common control, but that does not necessarily mean that each corporation in the enterprise stands in the position of plaintiff's employer." *Howard v. John Moore, L.P.,* No. CIV.A. H-13-1672, 2014 WL 5090626, at *4 (S.D. Tex. Oct. 9, 2014). In the FLSA context, these enterprise concepts generally apply only to the question of whether a named defendant is sufficiently large to be governed by the FLSA. As one district court explained, Mere corporate relationship is insufficient to give standing to sue under the FLSA. *See Pineiro Diaz v. Adchem Pharma Operations*, 2005 WL 2397489, at *10 (D. P.R. Sept. 28, 2005).[13]

In addition to the subject matter jurisdiction challenge, the LA Defendants also assert a lack of specific personal jurisdiction.[14] Specific jurisdiction over a nonresident defendant is

---

[13] Of course, if in economic reality, the putative employer controls plaintiff's employment, the fact the putative employer is engaged in an "enterprise" or other business venture does not exempt it from employer status over that employee.

[14] Hodges does not allege that there is general personal jurisdiction over the Louisiana Defendants.

appropriate when the defendant has purposefully directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

Mississippi's long-arm statute authorizes personal jurisdiction over a nonresident defendant in three situations: if the defendant (1) makes a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; (2) commits a tort in whole or in part in Mississippi; or (3) conducts any business or performs any character of work in Mississippi. Miss. Code Ann. § 13–3–57. Importantly, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (further citation omitted)). "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475). Specific personal jurisdiction is a claim-specific inquiry such that where "a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-275 (5th Cir. 2006).

Further, district courts within this circuit have recognized that there is no Fifth Circuit case holding that joint employer status (a finding, for standing purposes, which is a function of the economic reality factors) is a substitute for the minimum contacts test in determining whether a Court may exercise personal jurisdiction over an out of state defendant. *McRunells v. Acadia Healthcare Company, Inc.*, 2022 WL 7692159, at *3 (M.D. La. Oct. 13, 2022) (quoting *Hamm v.*

*Acadia Healthcare Co.*, 2021 WL 1212539 (E.D. La. Mar. 31, 2021)). For example, in *Garcia v. Peterson,* 319 F. Supp. 3d 863, 881 (S.D. Tex. 2018), the district court clearly rejected the plaintiffs' contention that alleged joint employment status can substitute for due process requirements, finding instead that the purported contacts the plaintiffs alleged should render the nonresident defendant their joint employer did not satisfy the requirements of due process. *Id.* ("The court finds that whether [the nonresident defendant] was considered the plaintiffs' 'employer' is not necessarily irrelevant, but it is also not determinative, as the employer test was not crafted to determine if exercising jurisdiction over a defendant 'employer' meets a due process inquiry. Rather, the court should consider [the nonresident defendant] contacts that may be part of the economics reality test to the extent they are the types of minimum contacts considered for the due process inquiry.").

In short, "specific personal jurisdiction requires that [the plaintiff's] suit arise out of or relates to a [nonresident defendant's] contact with the forum." *See Pace v. Cirrus Design Corp*., 93 F.4th 879, 894 (5th Cir. 2024). "Without this link, specific jurisdiction will be lacking, regardless of 'even regularly occurring sales' or activities within the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 264 (2017).

It is against the backdrop of these jurisdictional issues and applicable law that Hodges seeks to take of all Defendants (other than Care Givers, LLC), what I view as overwhelmingly broad and exhaustive discovery. I find—at least at this stage—that this discovery is not sufficiently tailored to the subject matter jurisdiction issue. Instead, as discussed above generally, the resolution of that issue invites analysis of the relationship of each separate corporate defendant to Plaintiff, an employee of Care Givers, LLC. That analysis, as discussed above, is driven by various factors that

instruct whether—as a matter of economic reality—that Defendant controls *her* employment and its terms and conditions.

I find, in this case, a graduated approach to the issue of jurisdictional discovery of Defendants is necessary, proper, and proportional to the needs of the instant case. Since an alleged lack of subject matter jurisdiction is common to all Defendants, excluding Care Givers, LLC, any initial discovery should be confined to addressing that issue. I also find that subject matter discovery should be propounded, at least initially, to only a reasonable sampling of both the Louisiana and Mississippi Defendants (including Care Givers, LLC, as discussed *infra* p. 37) consisting of a more narrowly drawn version of Plaintiff's proposed discovery. Specifically, Plaintiff will be limited to seeking the permitted modified discovery from five (5) Louisiana Defendants and five (5) Mississippi Defendants of Plaintiff's choosing, as well as Care Givers, LLC. Further discovery beyond this initial sampling will only proceed if this initial sample evinces some reasonable basis supporting Plaintiff's claims of jurisdiction. Plaintiff shall have 14 days from the date of entry of this Order to propound the permitted discovery. Applicable Defendants will have 30 days to respond. A telephonic status conference will be set at that juncture to determine next steps.

As a whole, I find Plaintiff's requested subpoenas to financial institutions [Doc. 98- Exh. 3] overly broad and not narrowly tailored to the jurisdictional issues present here. Unlike the interrogatories and requests for production outlined below, because of their already expansive breadth, these subpoenas cannot be narrowed sufficiently to comply with the limits on jurisdictional discovery. As such, the request to lift the stay to serve them is denied. [Doc. 73].

I have reviewed and recited below each of Plaintiff's proposed discovery requests that were addressed in her supplemental briefing as necessary to establish her jurisdictional claims. I find

12

that Plaintiff's use of a definitions section cross-referenced into each request to be, on its face, overly burdensome, impractical, and unnecessary. I also find, as outlined below, the remaining proposed necessary discovery requests are unnecessarily broad, and unduly burdensome and in some cases irrelevant to the jurisdictional issues before the Court. Accordingly, I have narrowed these permitted requests outlined below. For completeness, I have included the entirety of each set of proposed discovery including the definitions. I have italicized the sections not permitted at this juncture and bolded those that will be allowed to proceed as modified.

**Plaintiff's Interrogatories and Requests for Production to Louisiana Defendants**

*DEFINITIONS*

*Unless indicated otherwise, the following words and phrases are defined and used herein as follows:*

*1. "Plaintiff" shall mean Lacunya Hodges, who is the named Plaintiff in this proceeding.*

*2. "[LA Defendant]" shall mean [LA Defendant], the entity named as a Defendant in this case and, where applicable, its members, managers, managing members, officers, directors, employees, partners, owners, corporate parents, subsidiaries, or affiliates.*

*3. "Defendants" shall mean the entities named as Defendants in this case.*

*4. "Putative Collective Member" or "Collective Members" shall mean all current and former hourly, nonexempt employees of Defendants who earned incentives for picking up extra shifts, shift differentials, sign-on bonuses, or Baylor pay during weeks he or she worked more than forty hours.*

*5. "Communication" shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise such as in e-mail form.*

*6. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronic or*

*computerized data compilations such as e-mails among others. A draft or non-identical copy is a separate document within the meaning of this term.*

*7. "Identify" with respect to documents: When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s) and recipient(s), and (v) the last known location of the document and the identity of person who has possession of it.*

*8. "Identify" with respect to persons: When referring to persons, to "identify" means to give the name, the title, the last known residence address, the last known e-mail address and the last known business address of the person.*

*9. "Representative" shall mean the party and, where applicable, its members, managers, managing members, officers, directors, employees, partners, owners, corporate parents, subsidiaries, or affiliates.*

*10. "Person" is defined as any natural person or any business, legal or governmental entity or association.*

*11. "Concerning" means relating to, referring to, describing, evidencing, or constituting.*

*12. "Employment matter" means any human resources matter, including but not limited to hiring, firing, training, retention, promotion or demotion related activity as well as any payroll, timekeeping, or employee benefits related activity.*

*13. "Mississippi-based" means a Person who has its principal place of business, state of formation, state of incorporation, or domicile in Mississippi.*

*14. The terms "all" and "each" shall be construed as all and each.*

14

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16. The use of the singular form of any word includes the plural and vice versa.

17. For Interrogatory No. 19, "Employees" means:

a. Executive directors or facility administrators;

b. Regional administrators or area managers;

c. Marketing or community relations staff;

d. Human resources managers;

e. Payroll and benefits administrators;

f. Business office managers;

g. Billing and collections staff;

h. Accounts payable and receivable clerks;

i. Dietary supervisors or regional dietitians;

j. Maintenance supervisors;

k. IT support staff;

l. Compliance or risk management officers;

m. Corporate training personnel;

n. Legal counsel or compliance consultants;

o. Regional staffing coordinators or schedulers

18. For Interrogatory No. 19, "Services" means:

a. Human resources and payroll services;

b. Employee training and orientation programs;

*c. Compliance and regulatory oversight;*

*d. Legal and risk management services;*

*e. Billing and reimbursement processing;*

*f. Accounting and finance functions;*

*g. Dietary menu planning and nutrition consulting;*

*h. Purchasing and vendor contracting;*

*i. Pharmacy services or medication supply arrangements;*

*j. IT support, software licensing, and data management;*

*k. EMR (Electronic Medical Record) systems and licenses;*

*l. Marketing and admissions operations;*

*m. Scheduling and staffing systems or shared agency relationships;*

*n. Electronic mail (email) domains and services;*

*o. Phone systems*

*19. For Interrogatory No. 19, "Records" means:*

*a. Employee files and HR records;*

*b. Payroll and benefits records;*

*c. Training and certification records;*

*d. Financial and accounting records;*

*e. Corporate policies and procedures;*

*f. Resident medical charts;*

*g. Admissions and discharge records;*

*h. Incident reports and grievance logs;*

*i. Quality assurance documentation;*

*j. Infection control reports;*

*k. State survey or inspection reports;*

*l. Vendor and contractor records;*

*m. Invoices, purchase orders, and supply chain documents;*

*n. IT and cybersecurity records;*

*o. Corporate ownership and management agreements;*

*p. Inter-facility transfer documentation;*

*q. Marketing and admissions data (referrals, census, leads)*

*20. For Interrogatory No. 19, "Equipment" means:*

*a. Medical and therapy equipment (e.g., lifts, wheelchairs, oxygen tanks);*

*b. Diagnostic or monitoring devices (e.g., vitals machines, pulse oximeters);*

*c. Computer servers or network hardware;*

*d. PPE inventory or stockpiles;*

*e. Telecommunication systems (shared lines, VOIP platforms, etc.);*

*f. Centralized EMR or data management software licenses;*

*g. Medical supply inventories or vendor accounts*

*21. For Interrogatory No. 19, "Shares" or "Shared" refer broadly to any arrangement, formal or informal, in which two or more facilities or entities: (1) use, access, or benefit from the same Employees, Services, Records, Systems, or Equipment whether simultaneously or not; (2) rely on, coordinate through, or receive support from any Employees, Services, Records, Systems, or Equipment whether simultaneously or not; or (3) maintain joint or overlapping control, supervision, or ownership of any Employees, Services, Records, Systems, or Equipment whether simultaneously or not.*

**Unless specifically indicated otherwise, the applicable time period for all Interrogatories and Requests for Production contained herein is from June 23, 2022, through the present.**

*INTERROGATORY NO. 1: Identify every Representative of [LA Defendant] who communicated with a Representative of Administrative Systems, Inc., Medico, LLC, Regional Care, LLC, Account Management Services, Inc., or any other Mississippi-based Person and describe the substance of the communication.*

*INTERROGATORY NO. 2: Identify every Representative of Administrative Systems, Inc., Medico, LLC, Regional Care, LLC, Account Management Services, Inc., or any other Mississippi-based Person that the Representatives identified in response to Interrogatory No. 1 communicated with.*

*INTERROGATORY NO. 3: Describe the relationship or agreement [LA Defendant] has with Administrative Systems, Inc., including the length of the relationship or agreement, the full extent of all services provided to each other pursuant to the relationship or agreement, and the circumstances surrounding the establishment of the relationship or agreement.*

**INTERROGATORY NO. 3: Describe the relationship or agreement, if any, [insert here the name of one of the 5 selected LA Defendants] has with Administrative Systems, Inc., including the length of the relationship or agreement, if any, the full extent of all services, if any, provided to each other pursuant to any such relationship or agreement.**

*INTERROGATORY NO. 4: Identify all "Mississippi-based" Persons that [LA Defendant] receives services from for any "employment matter."*

*INTERROGATORY NO. 5: Describe the organizational structure of LA Defendant] including its members, officers, directors, administrators, and employees and to whom each person reports.*

**INTERROGATORY NO. 5 For the relevant period, are any of the members, officers, directors, administrators, or employees [insert here the name of one of the 5 selected LA**

Defendants] also now, or in the past, the same as any officer, director, administrator or employee of Care Givers, LLC.

*INTERROGATORY NO. 6: Describe the organizational relationship between [LA Defendant] and any other named Defendant, including but limited to any contractual agreements, financial guarantees, pledges of assets or operating capital, or any reporting relationship between their respective employees or officers.*

**INTERROGATORY NO. 6: Are there any contracts, financial agreements pledges of assets or operating capital or any reporting relationship between [insert here the name of one of the 5 selected LA Defendants] and its officers and employees and those of Care Givers, LLC for the relevant period.**

*INTERROGATORY NO. 7: Identify all administrators, administrators in training, and employees who have worked for [LA Defendant] and a Mississippi-based Defendant, either simultaneously or not, and specify whether such employment was simultaneous or non- simultaneous and the date of such employment.*

*INTERROGATORY NO. 8: Identify all offices or mailing addresses that [LA Defendant] receives mail at or lists as a proper location or mailing address and Identify the Persons who are responsible for maintaining the office or mailing address day-to-day.*

*INTERROGATORY NO. 9: Identify every Person who participates(d) in the creation, alteration, replacement, or removal of any employee handbook used by [LA Defendant] and Describe his, her, or its participation.*

**INTERROGATORY NO. 9: Did any person who is or was during the relevant period employed by [insert here the name of one of the 5 selected LA Defendants] participate in the**

creation, alteration, replacement, or removal of any employee handbook used by Care Givers, LLC, and if so, describe his, her, or its participation.

*INTERROGATORY NO. 10: Identify every Person who participates(d) in the creation, alteration, replacement, or removal of any "Employment matter" form used by [LA Defendant] and Describe his, her, or its participation.*

**INTERROGATORY No. 10: Did any person who is or was during the relevant period employed by [insert here the name of one of the 5 selected LA Defendants] participate in the creation, alteration, replacement, or removal of any employment matter form used by Care Givers, LLC, and if so, describe his, her, or its participation.**

*INTERROGATORY NO. 11: Identify every Person who participates(d) in the creation, alteration, replacement, or removal of any "Employment matter" policy or procedure used by [LA Defendant] and Describe his, her, or its participation.*

**INTERROGATORY NO. 11: Did any person who is or was during the relevant period employed by [insert here the name of one of the 5 selected LA Defendants] participate in the creation, alteration, replacement, or removal of any employment matter policy or procedure used by Care Givers, LLC, and if so, describe his, her, or its participation.**

*INTERROGATORY NO. 12: Describe, in detail, all formulas used by [LA Defendant] to calculate the overtime compensation due to its employees and Identify all Persons who participates(d) in the creation, alteration, replacement, or removal of the formula.*

**INTERROGATORY NO. 12: Are any formulas used by [insert here the name of one of the 5 selected LA Defendants] to calculate the overtime compensation due to its employees the same as those used by Care Givers, LLC (for the relevant period).**

*INTERROGATORY NO. 13: Describe the relationship or agreement [LA Defendant] has with Medico, LLC, including the length of the relationship or agreement, the full extent of all services provided to each other pursuant to the relationship or agreement, and the circumstances surrounding the establishment of the relationship or agreement.*

*INTERROGATORY NO. 14: Identify all Persons responsible for the creation of, participation in, offering of, monitoring of, and evaluation of all employee benefits, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are offered to [LA Defendants'] employees.*

**INTERROGATORY NO. 14: For the relevant period, are any of the Persons responsible for the creation of, participation in, offering of, monitoring of, and evaluation of [insert here the name of one of the 5 selected LA Defendants] employee benefits, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, the same as those persons who are responsible for the same at Care Givers, LLC.**

*INTERROGATORY NO. 15: Describe the Person identified in response to Interrogatory No. 14's role in the creation of, participation in, offering of, monitoring of, and evaluation of all employee benefits that are offered to [LA Defendants'] employees.*

**INTERROGATORY NO. 15: If you answered in the affirmative to Interrogatory 14, describe the Person's role in the creation of, participation in, offering of, monitoring of, and evaluation of those employee benefits offered to Care Givers, LLC employees.**

*INTERROGATORY NO. 16: Identify all Persons who maintain the employment records of [LA Defendant], including Persons with the power and ability to view, edit, share, review, and access the employment records.*

*INTERROGATORY NO. 17: Describe the responsibilities, powers, and/or abilities of the Persons identified in Response to Interrogatory No. 16 Concerning the [LA Defendants'] employment records.*

*INTERROGATORY NO. 18: Identify all Persons, including but not limited to the definition of "Person" defined herein as well as any entities, individuals, or trusts, that have a membership or ownership interest in [LA Defendant] and state the percentage of membership or ownership of for each.*

**INTERROGATORY NO. 18: Identify all persons, entities, individuals, or trusts, if any that have a membership or ownership interest in [insert here the name of one of the 5 selected LA Defendants] and who have or have had in the relevant period a membership or ownership interest in Care Givers, LLC, and provide the percentages.**

*INTERROGATORY NO. 19: Identify any and all Employees, Services, Records, and Equipment [LA Defendants] currently Shares or has Shared with any other named Defendant.*

**INTERROGATORY NO. 19: Identify any and all employees, services, records, and equipment [insert here the name of one of the 5 selected LA Defendants] shares or has shared during the relevant period with Care Givers, LLC.**

INTERROGATORY NO. 20: Identify all Persons involved in the procurement, negotiation, or modification of any of [LA Defendant]'s loans, lines of credit, guarantees, or other borrowings, including but not limited to any arrangements with JPMorgan Chase Bank, and Describe their involvement in the procurement.

**INTERROGATORY NO. 20: For the relevant period, are/were any persons or entities involved in the procurement, negotiation, or modification of any of [insert here the name of one of the 5 selected LA Defendants]'s loans, lines of credit, guarantees, or other borrowings,**

**including but not limited to any arrangements with JPMorgan Chase Bank, also involved with Care Givers, LLC's procurement, negotiation, or modification of any loans, lines of credit, guarantees, or other borrowings, including but not limited to any arrangements with JPMorgan Chase Bank, during the relevant period and describe their involvement in the procurement.**

*REQUEST FOR PRODUCTION NO. 1: All Documents Concerning the communications from the Representatives identified in Response to Interrogatory No. 1 to the Representative identified in Response to Interrogator No. 2.*

*REQUEST FOR PRODUCTION NO. 2: All Documents Concerning the relationship or agreement described in response to Interrogatory No. 3.*

*REQUEST FOR PRODUCTION NO. 3: All Documents Concerning the employment matter services received by [LA Defendant] from the Person identified in response to Interrogatory No.*

*REQUEST FOR PRODUCTION NO. 4: All Documents Concerning the organizational structure described in response to Interrogatory No. 5.*

**REQUEST FOR PRODUCTION NO. 4: If your answer to Interrogatory 5 was in the affirmative, produce all documents reflecting any such employee/officer's role in the organizational structure of [insert here the name of one of the 5 selected LA Defendants].**

*REQUEST FOR PRODUCTION NO. 5: All Documents Concerning the organizational relationship described in response to Interrogatory No. 6.*

**REQUEST FOR PRODUCTION NO. 5: If your answer to Interrogatory No. 6 was in the affirmative, produce all documents reflecting the same.**

*REQUEST FOR PRODUCTION NO. 6: Produce all Documents Concerning the hiring, firing, or transfer of the administrators, administrators in training, and employees identified in response to Interrogatory No. 7.*

*REQUEST FOR PRODUCTION NO. 7: All of [LA Defendants'] formation documents, operating agreements, corporate bylaws, shareholder agreements, partnership agreements, and any other related formation or operating documents.*

*REQUEST FOR PRODUCTION NO. 8: All written consents, resolutions, and minutes from company, management, board, or ownership meetings of [LA Defendant].*

*REQUEST FOR PRODUCTION NO. 9: All current and former employee handbooks in effect for [LA Defendant].*

**REQUEST FOR PRODUCTION NO. 9: All current and former employee handbooks in effect for [insert here the name of one of the 5 selected LA Defendants] if the same handbook was, during the relevant period, in effect for Care Givers, LLC.**

*REQUEST FOR PRODUCTION NO. 10: All written current or former "Employment matter" policies or procedures used by [LA Defendant].*

**REQUEST FOR PRODUCTION NO. 10: All written current or former employment policies or procedures used by [insert here the name of one of the 5 selected LA Defendants] if the same policy or procedure was, during the relevant period, in effect for Care Givers, LLC.**

*REQUEST FOR PRODUCTION NO. 11: Produce a redacted sample of paystubs and time records, with enough information to determine (1) the employee's workweek, (2) the total hours worked during the workweek, (3) the total remuneration for employment paid to the employee for the workweek, and (4) the total overtime compensation paid to the employee for the workweek, to verify the response to Interrogatory No. 12.*

24

**REQUEST FOR PRODUCTION NO. 11: Produce a redacted sample of Plaintiff Hodges paystubs and time records, if any from or by [insert here the name of one of the 5 selected LA Defendants], with enough information to determine (1) her workweek, if any with the LA defendant; (2) the total hours, if any, she worked during the workweek; (3) the total remuneration for employment, if any, paid to her for the workweek; and (4) the total overtime compensation, if any, paid to her for the workweek.**

*REQUEST FOR PRODUCTION NO. 12: Produce all Documents Concerning any employee benefits, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are offered to [LA Defendants'] employees.*

**REQUEST FOR PRODUCTION NO. 12: Produce all documents concerning any employee benefit, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are the same as were offered, during the relevant period to both [insert here the name of one of the 5 selected LA Defendants] employees and Care Givers, LLC employees.**

*REQUEST FOR PRODUCTION NO. 13: Produce all Documents Concerning any written policies, procedures, powers, and abilities of all Persons to maintain, view, edit, share, review, and access the [LA Defendants'] employee records.*

**REQUEST FOR PRODUCTION NO. 13: For the relevant period, produce all documents concerning any written policies, procedures, powers, and abilities of all persons employed by [insert here the name of one of the 5 selected LA Defendants] to maintain, view, edit, share, review, and access Care Givers, LLC's employee records.**

REQUEST FOR PRODUCTION NO. 14: Produce all Documents describing the membership or ownership interest in [LA Defendant] and state the percentage of membership or ownership of for each.

**REQUEST FOR PRODUCTION NO. 14: For the relevant period, produce all documents describing the membership or ownership interest in [insert here the name of one of the 5 selected LA Defendants] of any member who is also a member or owner of Care Givers, LLC.**

*REQUEST FOR PRODUCTION NO. 15: Produce all Documents Concerning the procurement, negotiation, or modification of any of [LA Defendant]'s loans, lines of credit, guarantees, or other borrowings, including but not limited to any arrangements with JPMorgan*

*Chase Bank.*

**REQUEST FOR PRODUCTION NO. 15: For the relevant period, produce all documents concerning the procurement, negotiation, or modification of any of [insert here the name of one of the 5 selected LA Defendants]'s loans, lines of credit, guarantees, or other borrowings, that also involved Care Givers, LLC including but not limited to any arrangements with JPMorgan Chase Bank.**


**Plaintiff's Interrogatories and Requests for Production to Non-Louisiana Defendants**

*DEFINITIONS*

*Unless indicated otherwise, the following words and phrases are defined and used herein as follows:*

*1. "Plaintiff" shall mean Lacunya Hodges, who is the named Plaintiff in this proceeding.*

2. *"[All Other Defendants]" shall mean [All Other Defendants], the entity named as a Defendant in this case and, where applicable, its members, managers, managing members, officers, directors, employees, partners, owners, corporate parents, subsidiaries, or affiliates.*

3. *"Defendants" shall mean the entities named as Defendants in this case.*

4. *"Putative Collective Member" or "Collective Members" shall mean all current and former hourly, nonexempt employees of Defendants who earned incentives for picking up extra shifts, shift differentials, sign-on bonuses, or Baylor pay during weeks he or she worked more than forty hours.*

5. *"Communication" shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise such as in e-mail form.*

6. *"Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronic or computerized data compilations such as e-mails among others. A draft or non-identical copy is a separate document within the meaning of this term.*

7. *"Identify" with respect to documents: When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s) and recipient(s), and (v) the last known location of the document and the identity of person who has possession of it.*

8. *"Identify" with respect to persons: When referring to persons, to "identify" means to give the name, the title, the last known residence address, the last known e-mail address and the last known business address of the person.*

9. *"Representative" shall mean the party and, where applicable, its members, managers, managing members, officers, directors, employees, partners, owners, corporate parents, subsidiaries, or affiliates.*

27

10. "Person" is defined as any natural person or any business, legal or governmental entity or association.

11. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

12. "Employment matter" means any human resources matter, including but not limited to hiring, firing, training, retention, promotion or demotion related activity as well as any payroll, timekeeping, or employee benefits related activity.

13. "Mississippi-based" means a Person who has its principal place of business, state of formation, state of incorporation, or domicile in Mississippi.

14. The terms "all" and "each" shall be construed as all and each.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16. The use of the singular form of any word includes the plural and vice versa.

17. For Interrogatory No. 11, "Employees" means:

a. Executive directors or facility administrators;

b. Regional administrators or area managers;

c. Marketing or community relations staff;

d. Human resources managers;

e. Payroll and benefits administrators;

f. Business office managers;

g. Billing and collections staff;

h. Accounts payable and receivable clerks;

i. Dietary supervisors or regional dietitians;

*j. Maintenance supervisors;*

*k. IT support staff;*

*l. Compliance or risk management officers;*

*m. Corporate training personnel;*

*n. Legal counsel or compliance consultants;*

*o. Regional staffing coordinators or schedulers*

*18. For Interrogatory No. 11, "Services" means:*

*a. Human resources and payroll services;*

*b. Employee training and orientation programs;*

*c. Compliance and regulatory oversight;*

*d. Legal and risk management services;*

*e. Billing and reimbursement processing;*

*f. Accounting and finance functions;*

*g. Dietary menu planning and nutrition consulting;*

*h. Purchasing and vendor contracting;*

*i. Pharmacy services or medication supply arrangements;*

*j. IT support, software licensing, and data management;*

*k. EMR (Electronic Medical Record) systems and licenses;*

*l. Marketing and admissions operations;*

*m. Scheduling and staffing systems or shared agency relationships;*

*n. Electronic mail (email) domains and services;*

*o. Phone systems*

*19. For Interrogatory No. 11, "Records" means:*

*a. Employee files and HR records;*

*b. Payroll and benefits records;*

*c. Training and certification records;*

*d. Financial and accounting records;*

*e. Corporate policies and procedures;*

*f. Resident medical charts;*

*g. Admissions and discharge records;*

*h. Incident reports and grievance logs;*

*i. Quality assurance documentation;*

*j. Infection control reports;*

*k. State survey or inspection reports;*

*l. Vendor and contractor records;*

*m. Invoices, purchase orders, and supply chain documents;*

*n. IT and cybersecurity records;*

*o. Corporate ownership and management agreements;*

*p. Inter-facility transfer documentation;*

*q. Marketing and admissions data (referrals, census, leads)*

*20. For Interrogatory No. 11, "Equipment" means:*

*a. Medical and therapy equipment (e.g., lifts, wheelchairs, oxygen tanks);*

*b. Diagnostic or monitoring devices (e.g., vitals machines, pulse oximeters);*

*c. Computer servers or network hardware;*

*d. PPE inventory or stockpiles;*

*e. Telecommunication systems (shared lines, VOIP platforms, etc.);*

*f. Centralized EMR or data management software licenses;*

*g. Medical supply inventories or vendor accounts*

*21. For Interrogatory No. 11, "Shares" or "Shared" refer broadly to any arrangement, formal or informal, in which two or more facilities or entities: (1) use, access, or benefit from the same Employees, Services, Records, Systems, or Equipment whether simultaneously or not; (2) rely on, coordinate through, or receive support from any Employees, Services, Records, Systems, or Equipment whether simultaneously or not; or (3) maintain joint or overlapping control, supervision, or ownership of any Employees, Services, Records, Systems, or Equipment whether simultaneously or not.*

**22. Unless specifically indicated otherwise, the applicable time period for all Interrogatories and Requests for Production contained herein is from June 23, 2022, through the present.**

*INTERROGATORIES*

*INTERROGATORY NO. 1: Identify every Person who participates(d) in the creation, alteration, replacement, or removal of any employee handbook used by [All Other Defendants] and Describe his, her, or its participation.*

**INTERROGATORY NO. 1: For the relevant period, did any person who is or was employed by [insert name of one of the 5 selected non-LA Defendants] participate in the creation, alteration, replacement, or removal of any employee handbook used by Care Givers, LLC, and if so, describe his, her, or its participation.**

*INTERROGATORY NO. 2: Identify every Person who participates(d) in the creation, alteration, replacement, or removal of any "Employment matter" form used by [All Other Defendants] and Describe his, her, or its participation.*

31

**INTERROGATORY NO. 2: Did any person who is or was during the relevant period employed by [insert here the name of one of the 5 selected non-LA Defendants] participate in the creation, alteration, replacement, or removal of any employment matter form used by Care Givers, LLC, and if his, her, or its participation**.

INTERROGATORY NO. 3: Identify every Person who participates(d) in the creation, alteration, replacement, or removal of any "Employment matter" policy or procedure used by [All Other Defendants] and describe his, her, or its participation.

**INTERROGATORY NO. 3: Did any person who is or was during the relevant period employed by [insert here the name of one of the 5 selected non-LA Defendants] participate in the creation, alteration, replacement, or removal of any employment matter policy or procedure used by Care Givers, LLC, and if so, describe his, her, or its participation**.

INTERROGATORY NO. 4: Describe, in detail, all formulas used by [All Other Defendants] to calculate the overtime compensation due to its employees and Identify all Persons who participates(d) in the creation, alteration, replacement, or removal of the formula.

**INTERROGATORY NO. 4: Are any formulas used by [insert here the name of one of the 5 selected non-LA Defendants] to calculate the overtime compensation due to its employees the same as those used by Care Givers, LLC (for the relevant period).**

INTERROGATORY NO. 5: Describe the relationship or agreement [All Other Defendants] has with Medico, LLC, including the length of the relationship or agreement, the full extent of all services provided to each other pursuant to the relationship or agreement, and the circumstances surrounding the establishment of the relationship or agreement.

INTERROGATORY NO. 6: Identify all Persons responsible for the creation of, participation in, offering of, monitoring of, and evaluation of all employee benefits, including but not limited to

32

*cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are offered to [All Other Defendants] employees.*

**INTERROGATORY NO. 6: Are any of the Persons responsible for the creation of, participation in, offering of, monitoring of, and evaluation of [insert here the name of one of the 5 selected non-LA Defendants] employee benefits, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, the same as those persons who are responsible for the same at Care Givers, LLC.**

*INTERROGATORY NO. 7: Describe the Person identified in response to Interrogatory No. 14's role in the creation of, participation in, offering of, monitoring of, and evaluation of all employee benefits that are offered to [All Other Defendants] employees.*

**INTERROGATORY NO. 7 If you answered in the affirmative to Interrogatory 6, describe the Person's role in the creation of, participation in, offering of, monitoring of, and evaluation of those employee benefits.**

*8. INTERROGATORY NO. 8: Identify all Persons who maintain the employment records of [All Other Defendants], including Persons with the power and ability to view, edit, share, review, and access the employment records.*

*9. INTERROGATORY NO. 9: Describe the responsibilities, powers, and/or abilities of the Persons identified in Response to Interrogatory No. 16 Concerning the [All Other Defendants] employment records.*

*10. INTERROGATORY NO. 10: Describe the responsibilities, powers, and/or abilities of the Persons identified in Response to Interrogatory No. 16 Concerning the [All Other Defendants] employment records.*

33

*INTERROGATORY NO. 11: Identify any and all Employees, Services, Records, and Equipment [All Other Defendants] currently Shares or has Shared with any other named Defendant.*

**INTERROGATORY NO. 11: Identify any and all employees, services, records, and equipment [insert here the name of one of the 5 selected non-LA Defendants] currently shares or has shared in the relevant period with Care Givers, LLC.**

*INTERROGATORY NO. 12: Identify all Persons involved in the procurement, negotiation, or modification of any of [All Other Defendants]'s loans, lines of credit, guarantees, or other borrowings, including but not limited to any arrangements with JPMorgan Chase Bank, and Describe their involvement in the procurement.*

REQUESTS FOR PRODUCTION OF DOCUMENTS

*REQUEST FOR PRODUCTION NO. 1: All of [All Other Defendants] formation documents, operating agreements, corporate bylaws, shareholder agreements, partnership agreements, and any other related formation or operating documents.*

**REQUEST FOR PRODUCTION NO. 1: All of [insert here the name of one of the 5 selected non-LA Defendants]'s formation documents, operating agreements, corporate bylaws, shareholder agreements, partnership agreements, and any other related formation or operating documents to the extent they also refer to or concern the operations of Care Givers, LLC.**

REQUEST FOR PRODUCTION NO. 2: All written consents, resolutions, and minutes from company, management, board, or ownership meetings of [All Other Defendants].

**REQUEST FOR PRODUCTION NO. 2: For the relevant period, all written consents, resolutions, and minutes from company, management, board, or ownership meetings of**

**[insert here the name of one of the 5 selected non-LA Defendants] to the extent they also refer or concern the operations of Care Givers, LLC.**

*3. REQUEST FOR PRODUCTION NO. 3: All current and former employee handbooks in effect for [All Other Defendants].*

**REQUEST FOR PRODUCTION NO. 3: All current and former employee handbooks in effect for [insert here the name of one of the 5 selected non-LA Defendants] to the extent they also refer to or concern the operations of Care Givers, LLC.**

*REQUEST FOR PRODUCTION NO. 4: All written current or former "Employment matter" policies or procedures used by [All Other Defendants].*

**REQUEST FOR PRODUCTION NO. 4: All written current or former "Employment matter" policies or procedures used by [insert here the name of one of the 5 selected non-LA Defendants] to the extent they also refer to or concern the operations of Care Givers, LLC.**

*REQUEST FOR PRODUCTION NO. 5: All written current or former "Employment matter" policies or procedures used by [All Other Defendants].*

**REQUEST FOR PRODUCTION NO. 5: All written current or former "Employment matter" policies or procedures used by [insert here the name of one of the 5 selected non-LA Defendants] to the extent they also refer to or concern the operations of Care Givers, LLC.**

*REQUEST FOR PRODUCTION NO. 6: Produce a redacted sample of paystubs and time records, with enough information to determine (1) the employee's workweek, (2) the total hours worked during the workweek, (3) the total remuneration for employment paid to the employee for the workweek, and (4) the total overtime compensation paid to the employee for the workweek, to verify the response to Interrogatory No. 4.*

**REQUEST FOR PRODUCTION NO. 6: Produce a redacted sample of Plaintiff Hodges' paystubs and time records, if any, from or by the [insert here the name of one of the 5 selected non-LA Defendants] with enough information to determine (1) her workweek, if any with that defendant; (2) the total hours she worked for that defendant during the workweek; (3) the total remuneration for employment paid to her for the workweek; and (4) the total overtime compensation paid to her for the workweek**.

*REQUEST FOR PRODUCTION NO. 7: Produce all Documents Concerning any employee benefits, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are offered to [All Other Defendants] employees.*

**REQUEST FOR PRODUCTION NO. 7 Produce all documents concerning any employee benefit, if any, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are the same as were offered, during the relevant period to both [insert here the name of one of the 5 selected non-LA Defendants] employees and Care Givers, LLC employees.**

*8. REQUEST FOR PRODUCTION NO. 8: Produce all Documents Concerning any written policies, procedures, powers, and abilities of all Persons to maintain, view, edit, share, review, and access the [All Other Defendants] employee records.*

**REQUEST FOR PRODUCTION NO. 8: For the relevant period, produce all documents concerning any written policies, procedures, powers, and abilities of all persons employed by [insert here the name of one of the 5 selected non-LA Defendants] to maintain, view, edit, share, review, and access Care Givers, LLC's employee records.**

36

*REQUEST FOR PRODUCTION NO. 9: Produce all Documents describing the membership or ownership interest in [All Other Defendants] and state the percentage of membership or ownership of for each.*

**REQUEST FOR PRODUCTION NO. 9: For the relevant period, produce all documents describing the membership or ownership interest in [insert here the name of one of the 5 selected non-LA Defendants] of any member who is also a member or owner of Care Givers, LLC.**

*10. REQUEST FOR PRODUCTION NO. 10: Produce all Documents Concerning the procurement, negotiation, or modification of any of [All Other Defendants]'s loans, lines of credit, guarantees, or other borrowings, including but not limited to any arrangements with JPMorgan Chase Bank.*

**REQUEST FOR PRODUCTION NO. 10: For the relevant period, produce all documents concerning the procurement, negotiation, or modification of any of [insert here the name of one of the 5 selected non-LA Defendants] loans, lines of credit, guarantees, or other borrowings, that also involved Care Givers, LLC, including but not limited to any arrangements with JPMorgan Chase Bank.**

In addition to the above, Care Givers, LLC may also be served the above permitted discovery, modified as necessary by Plaintiff to seek the same information addressed in the permitted discovery as it relates to its involvement, if any, with each of the 5 Mississippi defendants and the 5 Louisiana defendants Plaintiff chooses to seek discovery from. For example, Interrogatory No. 5 to the Louisiana defendants may be modified in discovery to Care Givers, LLC to state as to each selected Louisiana Defendant: "For the relevant period, are any of the members, officers, directors, administrators, or employees Care Givers, LLC, also now, or in the past, the

same as any officer, director, administrator or employee of [insert here the name of one of the 5 selected LA Defendants]." By way of further example, REQUEST FOR PRODUCTION NO. 8 may be modified as follows and served on Care Givers, LLC: "For the relevant period, produce all documents concerning any written policies, procedures, powers, and abilities of all persons employed by Care Givers, LLC to maintain, view, edit, share, review, and access employee records of [insert here the name of one of the 5 selected non-LA Defendants]."

## Conclusion

For the foregoing reasons, Plaintiff's motion to lift the stay [Doc. 69] is hereby GRANTED IN PART AND DENIED IN PART, as set forth above. Plaintiff's motion to lift the stay to serve subpoenas [Doc. 73] is denied as insufficiently tailored to seek relevant jurisdictional discovery.

**SO ORDERED** this, January 20, 2026.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**