## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**LACUNYA HODGES, on behalf of**
**herself and all others similarly situated**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO.: 4:25-cv-92-JDM-JMV**

**ADMINISTRATIVE SYSTEMS, INC., et. al.**                                    **DEFENDANTS**

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on a motion [Doc. 131] by Plaintiff Lacunya Hodges seeking to compel Defendant Care Givers, LLC ("Care Givers") to supplement its discovery responses relating to Plaintiff's limited jurisdictional discovery. Defendant has filed a response [Doc. 139], Plaintiff filed a reply [Doc. 141], and Defendant has filed, at the Court's direction[1], a sur-reply. [Doc. 153]. This matter is now ripe for decision. For the reasons stated below, Plaintiff's motion to compel is **GRANTED IN PART AND DENIED IN PART**.

**Background**

On June 23, 2025, Hodges filed the instant FLSA complaint naming 45 separate corporate entities, who each save two of the Mississippi Defendants,[2] operate a nursing home in a town or city in Mississippi or Louisiana. [Doc. 1]. Hodges seeks, for herself, recovery from all Defendants of an alleged shortage of wages paid for her work at Care Givers, LLC.[3]

On September 2, 2025, all Defendants, other than Care Givers, in three separate motions (grouped by Louisiana nursing homes, Mississippi nursing homes, and the two non-nursing home

---

[1] The undersigned ordered that Care Givers file a sur-reply if any information contained in the reply warranted a change or addition to its prior sworn responses to discovery at issue, or to its prior response made to the motion to compel. Care Givers was also ordered to identify any responsive information or documents that had been withheld or not been disclosed on the basis of any objection to discovery requests at issue. [Doc. 146].

[2] Administrative Systems, Inc. and Medico, LLC.

[3] She also seeks to have a collective class of all similarly employed employees of each of the other nursing home defendants certified.

1

Defendants) moved to dismiss based on lack of subject matter jurisdiction. [Docs. 17, 18, 19]. The Louisiana nursing home Defendants also moved to dismiss for lack of personal jurisdiction over them. [Doc. 20]. By raising these jurisdictional defenses, Defendants triggered Local Uniform Civil Rule 16(b)(3)(B), which, as relevant here, stayed all discovery pending a ruling on Defendants' motions.[4] [Doc. 37].

As permitted by the Local Rule, Plaintiff moved to lift the stay "to conduct limited jurisdictional discovery." [Doc. 69]. The Louisiana nursing home Defendants, the Mississippi nursing home Defendants, Care Givers, and non-nursing home Defendants each opposed the motion separately. [Docs. 80, 82, 84, 86]. The undersigned directed the parties to provide supplemental briefing on the motion to lift the stay [Doc. 95], which Plaintiff and Defendants did. [Docs. 98, 106].

On January 20, 2026, the undersigned granted in part and denied in part Plaintiff's motion to lift the stay. [Doc. 107]. That order was further amended on February 5, 2026. [Doc. 122]. As relevant here, the order permitted "some limited discovery against Care Givers, LLC, not to establish jurisdiction over Care Givers, LLC, but to establish whether other Defendants have sufficient control over her employment with Care Givers, LLC so as to, under the 'economic reality test,' be her employer for FLSA purpose" [Doc. 107] at 4, n.10. This limited discovery was allowed to proceed by way of specifically tailored discovery requests as outlined in the order.[5] *Id*. at 37-38. Plaintiff was also permitted to propound discovery requests to Administrative Systems, Inc. ("ASI"), Medico, LLC ("Medico"), and a sample of five (5) Louisiana and three (3) Mississippi

---

[4] Local Uniform Civil Rule 16(b)(3)(B) states that "Filing a motion to compel arbitration, or a motion asserting an immunity defense or jurisdictional defense, stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal. Whether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief."

[5] The discovery that was permitted was drafted by Plaintiff's counsel, and modified, in some cases, by the Court as outlined in the January 20th order. [Doc. 107].

nursing home Defendants, with further discovery permitted if the initial sample provided a basis for doing so. *Id*. As permitted by the order, Plaintiff propounded a set of interrogatories and requests for production to Care Givers on January 26, 2026. [Doc. 118]. Plaintiff also propounded separate discovery requests to ASI, Medico, three (3) Mississippi nursing home Defendants (Desoto Community Care Center, Madison Community Care Center, and Magee Community Care Center) and five (5) Louisiana nursing home Defendants (Oaks of Houma Community Care Center, Kenter, Community Care Center of Destrehan, Community Care Center of Hammond, and Versailles Healthcare). [Docs. 108 – 117].

Care Givers responded to Plaintiff's discovery requests on February 25, 2026 [Docs. 123, 124], and on February 26, 2026, Plaintiff's counsel sent Care Givers' counsel a letter detailing what he believed were specific deficiencies in the truth or completeness of Care Givers' discovery responses. [Doc. 131] – Exh. 3. Specifically at issue were Care Givers responses to Interrogatories 2-8 and Requests for Production 1-9. On March 6, 2026, Care Givers' counsel responded to Plaintiff's letter in a detailed letter, affirming the truth and completeness of its responses to the subject discovery requests. [Doc. 131] – Exh. 12.

Three days later, in a letter dated March 9, 2026, Plaintiff's counsel replied, in part, as follows:

> I do not believe [your letter of March 6, 2026] resolves the deficiencies identified in my February 26, 2026, letter. To the contrary, developments since that letter – specifically, the receipt of Administrative Systems, Inc.'s discovery responses on March 4, 2026 – have deepened rather than resolved the problems with Care Givers' responses.
>
> Because Care Givers has declined to supplement, and because a telephonic status conference is scheduled with the Court for March 16, 2026,[6] Plaintiff intends to request that the deficiencies in Care

---

[6] The March 16th status conference had been scheduled previously pursuant to the Court's order permitting limited discovery to discuss the status of the case once discovery responses had been made.

3

> Givers' discovery responses be included on the conference agenda. A copy of this letter, together with the parties' prior correspondence and the relevant discovery responses, will be provided to the Court in advance of the conference for the Court's review.
>
> I want to identify for you, before the conference, the specific issues that Plaintiff intends to raise so that you and your client have a full opportunity to consider them and supplement before being ordered to do so.

[Doc. 131] – Exh. 13 at 2.

Of note here is the fact that despite the letter's representation to the contrary, no copy of Plaintiff's letter of March 9th or any of the related correspondence was provided by Plaintiff's counsel to the Court prior to the March 16th conference.

However, Thursday evening, March 12, 2026, after the Court's typical hours, the Court received, via chambers' email, a *different* letter from Plaintiff's counsel. This letter recited that it was intended to preview the topics Plaintiff's counsel planned to bring to the Court's attention during the status conference on Monday, March 16, 2026. With the exception of a reference to seeking production of an ASI services agreement from Care Givers and a sampling of Plaintiff's pay stubs, this letter did not address the other alleged deficiencies in Care Givers' prior discovery responses.[7] Rather, in his March 12, 2026, letter to the Court, Plaintiff's counsel argued that *additional* discovery of the sampled defendants was warranted.

At the March 16, 2026, status conference, the undersigned, noting that defense counsel had not had a reasonable opportunity to even address the March 12, 2026, letter request for new discovery as of the Monday, March 16, 2026, call, declined to take up those issues at that time.

---

[7] Instead, the letter stated in relevant part: "These are not the only discovery responses from the Sample MS and LA Defendants that Plaintiff takes issue with. Many others are the subject of discovery correspondence letters that have been shared between the Parties. The deficient discovery responses identified in this section are those that Plaintiff believes should be produced expeditiously and without the need of motion practice given the simplicity of the discovery request and the items at issue."

However, later that day, the instant motion seeking to compel Care Givers to file different discovery responses than those previously made was filed. [Doc. 131].

Next, on Monday, April 6, 2026, the undersigned received an email to chambers from Plaintiff's counsel that had been sent after hours on Friday April 3rd, requesting a discovery conference prior to April 13th, which was Plaintiff's deadline for filing its supplemental response to the pending motions to dismiss filed by Defendants. Plaintiff's letter request stated Plaintiff had sent discovery deficiency letters to all of the sampled defendants—other than Care Givers—on March 9, 2026,[8] and that those Defendants had served their responses to the letters on March 25, 2026, declining to cure any of the alleged deficiencies. Plaintiff's counsel also stated Plaintiff intended to move to compel those defendants to provide adequate responses to the discovery, but first requested the Court hold a discovery conference to address the issues.

The Court scheduled the requested discovery conference for the following day, April 7th, 2026, and requested Plaintiff's counsel send the undersigned "the discovery and answers in dispute." In response, Plaintiff's counsel sent the undersigned a copy of the entirety of ten (10) different sets of discovery to all the sample Defendants (except Care Givers) and the responses to these discovery requests. Counsel for the sample Defendants also sent an email to the chambers' inbox (at 5:00 p.m. on April 6th) with a chart designating the particular discovery requests and responses at issue for each of the 10 identified Defendants, as well as enclosing 139 pages of prior correspondence dated between March 9 and March 25, 2026, between counsel for Plaintiff and

---

[8] Administrative Systems, Inc.; Medico, LLC; Madison Community Care Center, LLC; Desoto Community Care Center, LLC; Magee Community Care Center, LLC; Community Care Center of Destrehan, LLC; Community Care Center of Hammond, LLC; Kenter, LLC; Versailles Healthcare, LLC; and Oaks of Houma Community Care Center, LLC.

counsel for the sampled Defendants addressing the disputed discovery requests and responses of the sample Defendants, exclusive of Care Givers.

The requested discovery conference was held as scheduled on April 7, 2026. However, given the volume of materials required to digest to thoughtfully resolve the disputed issues, the undersigned advised that under these circumstances (including the morass of materials only submitted for review hours before the conference which included repeated serious allegations regarding counsel and/or various parties' veracity), the undersigned invited the parties to proceed with motion filing in order that there be a clear record concerning these disputes.

As of today, no such motions to compel have been filed. However, the previously filed instant motion to compel Care Givers to respond differently to the discovery Plaintiff had previously propounded to it, has ripened. Each discovery request at issue in the instant motion to compel is addressed in turn, below.

**Interrogatory No. 3:**

> **INTERROGATORY NO. 3:** Are there any contracts, financial agreements pledges of assets or operating capital or any reporting relationship between Care Givers, LLC and its officers and employees and those of The Sample MS and LA Defendants for the relevant period.
>
> **RESPONSE TO INTERROGATORY NO. 3:** Care Givers objects to Interrogatory No. 3 as overly broad and unduly burdensome. Care Givers further objects to Interrogatory No. 3 as the term "reporting relationship" is undefined. Without waiving said objections, Defendant would state that, to the best of its knowledge, there are no contracts, financial agreements, pledges of assets or operating capital or any reporting relationship between Care Givers or its officers and The Sample MS and LA Defendants. Defendant is further not aware of any such agreements between any person whom it employs and The Sample MS and LA Defendants.

6

In the instant motion, Plaintiff contends that Care Givers' position that it does not have a contract with ASI is directly contradicted by ASI's own sworn offer to produce such an agreement. [Doc. 132] at 8. In addition, Plaintiff asserts ASI also produced a Prepaid Technologies Corporate Prepaid Card Agreement and accompanying enrollment lists, which she contends Care Givers should have identified in its own Interrogatory No. 3 response. *Id*. at 9.

Finally, Plaintiff alleges Care Givers has wrongfully refused to disclose reporting relationships between it and ASI. Plaintiff maintains that she has identified several such relationships, including that of Toni Parkinson, the President of ASI, as well as an unnamed Regional Supervisor, Quality Improvement Nurse and Nurse Consultant. *Id*. at 10.

In its response to the motion to compel, Care Givers asserts it has not stated that there is no written agreement by which it might receive services from ASI. However, it maintains it is not a signatory or party to any agreement with ASI, but Care Givers does not object to production by ASI of the Services Agreement. [Doc. 140] at 5. Care Givers also acknowledges that ASI's services include payroll preparation, tax withholding, and W-2 issuance, as set forth in that agreement. *Id*.

As for the Prepaid Technologies Corporate Card Agreement and accompanying enrollment list produced by ASI ("Prepaid Documents"), Care Givers maintains that although it is identified in the referenced agreement as an entity to be enrolled with a prepaid card service, the document is not a financial agreement between Care Givers and ASI, or even a financial agreement to which Care Givers is a signatory. Accordingly, it is Care Givers' position that the document is unresponsive to Interrogatory No. 3. *Id*.

Care Givers maintains it has no reporting relationship with the sample Defendants, including ASI. *Id*. at 7.

To this response, Hodges replies "…the signatory question [as concerns the services agreement] is ultimately beside the point, because it is an argument about a document no one outside of Care Givers and ASI has seen. Care Givers has not objected to that production. Once the agreement is produced, its terms will speak for themselves. The parties and the Court will be able to determine who the signatories are, what obligations it creates, and what relationship it establishes between ASI and Care Givers. Until then, the parties are litigating the characterization of a document that only one side has read. The remedy is not to resolve the signatory question in the abstract. The remedy is to produce the document." [Doc. 141] at 8.

As to the Prepaid Technologies Corporate Card Agreement, Plaintiff asserts: "Care Givers' operating account funds a master holding account via ACH, and from that account funds are transferred to the prepaid cards. [Doc. 131-6 at ASI000016]. Care Givers' money flows through financial infrastructure that ASI established, ASI controls, and ASI guarantees. Under the agreement, if Care Givers fails to fund the account, ASI bears sole liability for the transactions. That is, at minimum, a guarantee by a Sample Defendant of Care Givers' financial obligations – which falls squarely within Interrogatory No. 3's request for 'contracts, financial agreements, pledges of assets or operating capital.' Care Givers' answer of "none" did not disclose any of this." *Id.* at 9.

Regarding reporting relationships, Plaintiff insists in her reply that Care Givers' answer to the effect that it has no relationship with the sample Defendants is not accurate and gives several examples of what Plaintiff identifies as a reporting relationship responsive to the interrogatory. *Id.* at 9. In particular she asserts three independent sources that disclose such relationships: federal enrollment records maintained by CMS, a government inspection report from Care Givers' own facility, and sworn testimony from a former employee of the centralized operation that services the

8

nursing home defendants in this case. According to Plaintiff, Toni Parkinson, the President of ASI, is designated as Care Givers' Authorized Official in the National Plan and Provider Enumeration System maintained by the Centers for Medicare & Medicaid Services making a reporting relationship between the two undeniable. *Id*. at 10. Hodges also asserts that Care Givers' administrator, Kelly Mann, uses an @asimgt.com email address and a CMS deficiency report identifies certain higher-level positions who train the Care Givers administrators and provide oversight. *Id*.

By sur-reply, Care Givers unequivocally asserts it has not withheld disclosure of any contracts or financial agreements or reporting relationships based on an objection; the ASI agreement is not a contract between ASI and Care Givers; Care Givers has no possession of the agreement and cannot produce it; and that ASI is believed to have already offered it to Plaintiff subject to a protective order. [Doc. 153]. As for the Prepaid Technologies enrollment document, Care Givers asserts it is not a financial agreement between it and ASI and that the document has already been produced to Plaintiff by ASI. *Id*. Care Givers reasserts its position that its officers and employees have no reporting relationship with any of the Sample Mississippi or Louisiana Defendants, and Plaintiff's reliance on statements to suggest otherwise in the Care Givers' handbook and/or in regulatory filings are simply factually inaccurate, or, in the case of certain oversight positions such as Regional Supervisor, Quality Improvement Nurse and Nurse Consultant, they are incorrectly assumed by Plaintiff to be ASI positions to whom Care Givers personnel are required to report.

**Resolution** –

Regarding the ASI services agreement, Care Givers has made its position clear and unequivocal: it is neither a party nor a signatory to a contract with ASI. However, it acknowledges

9

that, as described in that agreement, it receives various services from ASI. Further, the Court notes that ASI has already agreed to produce the services document, as Plaintiff herself suggests that document will speak for itself in terms of who may or may not be signatories/parties to the agreement.[9] Notwithstanding that production and Care Givers' unequivocal denial of a contract between it and ASI, the parties are, nevertheless, further directed to this Court's findings concerning the response to Interrogatory 11, wherein the Court requires specific supplementation of this Interrogatory 3 response.

As for the Prepaid Technologies Documents, it is the Court's understanding that ASI has already produced them to Plaintiff and Care Givers has made its position clear and unequivocal— it is not a party to a financial agreement with ASI pursuant to these documents. Thus, there is nothing for the Court to compel further disclosure or production of.

In regards to reporting relationships and the request to compel Care Givers to answer Interrogatory No. 3 differently than it already has in its sworn answers and defended in response to the instant motion, there is, again, simply nothing to compel. While the Court appreciates that Hodges believes she can ultimately demonstrate that the answer is not true, that is not a basis for the Court to order that Care Givers swear to the existence of something it has sworn and then reaffirmed does not exist.[10]

**Interrogatory No. 2:**

> **INTERROGATORY NO. 2:** For the relevant period, are any of the members, officers, directors, administrators, or employees of Care Givers, LLC also now, or in the past, the same as any officer, director, administrator, or employee of Administrative Systems, Inc.; Desoto Community Care Center, LLC; Madison Community Care Center, LLC; Magee Community Care Center, LLC; Medico,

---

[9] Any production may be subject to a protective order, as described above.

[10] Of course, all parties to this litigation have a duty to supplement their discovery responses should new or different information arise during the course of this proceeding.

LLC; Community Care Center of Destrehan, LLC; Community Care Center of Hammond, LLC; Kenter, LLC; Oaks of Houma Community Care Center, LLC; Versailles Healthcare, LLC ("The Sample MS and LA Defendants").

**RESPONSE TO INTERROGATORY NO. 2:** Care Givers objects to Interrogatory No. 2 as overly broad and unduly burdensome. Defendant further objects to Interrogatory No. 2 based on relevance. Without waiving said objections and to the best of this Defendant's knowledge, no member, officer or director of Care Givers, LLC has been an officer, member or director of The Sample MS and LA Defendants. The current Administrator of Clarksdale Nursing Center, Kelly Mann, is not now, nor in the past been an administrator or employee of the Sample MS and LA Defendants. Care Givers is without knowledge as to whether any current or former employee of Care Givers might have been employed at any time by any of The Sample MS and LA Defendants.

In her motion to compel, Plaintiff insists that Toni Parkinson, President of ASI, is listed as an Authorized Official within the National Plan and Provider Enumeration System (NPPES) maintained by the Centers for Medicare and Medicaid Services (CMS), for Care Givers, and as such, is an officer, director, administrator, or employee of Care Givers.

Further, Plaintiff points out that Care Givers admitted in Paragraph 100 of the answer to the complaint that "the handbook identifies Toni Parkinson as the corporate compliance officer" of Clarksdale Nursing Center. [Doc. 11] at 23. In addition, Plaintiff argues that on the social media website LinkedIn, Kelly Mann, who Care Givers has identified as an employee, identifies herself as an employee of ASI Management.

In response, Care Givers affirmatively asserts to the contrary. While conceding that its employee manual includes Ms. Parkinson as a corporate "compliance officer," Care Givers expressly denies that Ms. Parkinson is or was, in fact, the facility's corporate compliance officer. Care Givers does not dispute that Ms. Parkinson is listed as an Authorized Official in the NPPES system but maintains that it does not make her a member, officer, director, administrator or

11

employee of the limited liability company Care Givers or Clarksdale Nursing Center, the nursing facility Care Givers does business as.

As for Kelly Mann, Care Givers identifies her as the current administrator of Care Givers, and again, asserts that Ms. Mann is not currently an Administrator employed by ASI regardless of her LinkedIn profile. In short, while Care Givers concedes that Mann's "LinkedIn profile might cause Plaintiff to question her employer," it unequivocally asserts Ms. Mann is not currently an Administrator employed by Administrative Systems, Inc.—she is the Administrator of Care Givers, LLC d/b/a Clarksdale Nursing Center. It contends this information is verifiable by Ms. Mann's own signature on Care Givers' interrogatory responses, and it can be further verified by the Mississippi State Department of Health, which identifies Ms. Mann as Administrator of Clarksdale Nursing Center, Licensee Care Givers, LLC.

By reply, Plaintiff argues that if Parkinson is not the "compliance officer" for Care Givers and is not an officer of the LLC, and Kelly Mann is not an employee of ASI Management, then, in essence, Care Givers has serious regulatory issues.

By sur-reply, Care Givers reaffirms that Parkinson is, in fact, not a corporate compliance officer of Care Givers irrespective of any statement to that effect in a handbook, and even if any regulatory issue were created by that statement, it is not relevant to the issues in the instant litigation. Care Givers further notes that Ms. Parkinson's designation as the Authorized Official for Care Givers is as an "Authorized Representative." Care Givers states she is not an officer or director of Care Givers, LLC—such as a CEO, CFO, President, Secretary, etc. Further, whether Ms. Parkinson's signature on any CMS submissions complied with CMS regulatory guidelines is not the issue before the Court.

**Resolution –**

Care Givers has made its position clear and unequivocal: Ms. Parkinson is not an officer of Care Givers, LLC and Ms. Mann is not an employee of ASI. Though Plaintiff's counsel disagrees, the undersigned is not in position to order Care Givers to swear to that which it has repeatedly, and under oath, disavowed.

The undersigned notes, however, that as the Court pointed out in *Goosehead Ins. Agency, LLC v. Guillory*, No. CV 24-2146, 2025 WL 1397166, (E.D. La. May 14, 2025), a decision cited by both Plaintiff and Defendant in the briefing offered in support and opposition of the instant motion to compel, while the court cannot compel a party to produce documents that do not exist and a requesting party's belief, without evidence, that the responding party's production is not complete is not grounds for compelling production, if a court has concerns about the reasonableness of a party's efforts in responding to discovery, "the court may require a certification or 'confirm[ation]' that the discovery at issue does not exist. If the other party has or acquires evidence that the response is incomplete or that the affidavit or representation is false, then *other* remedies may be sought by motion." *Id*. (citing *Henderson v. Compdent of Tenn., Inc.*, No. 97-617, 1997 WL 756600, at *1 (E.D. La. Dec. 4, 1997) (denying motion to compel based on representation that documents that do not exist and noting other remedies are available if representation is untrue). For example, a Court has "the inherent authority to impose sanctions for misconduct and to protect the judicial process." *Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 678 (5th Cir. 2019). A court acting pursuant to this authority may sanction a party's perjury, *id.* at 678–79, and dishonest discovery responses, *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1182 (2017). To justify dismissal with prejudice under the Court's inherent power for such litigation conduct, there must be "a clear record of delay or contumacious

13

conduct by the plaintiff," and "lesser sanctions would not serve the best interests of justice." *Snider*, 946 F.3d at 678–79. Ordinarily, when a party commits perjury, these requirements are met. *Id.* The intentional submission of a false interrogatory response may also satisfy this standard. *Domingue v. Jantran, Inc.*, No. 4:18-CV-199-DMB-JMV, 2020 WL 5632964, at *1 (N.D. Miss. Sept. 21, 2020).

**Interrogatory No. 8**

> **INTERROGATORY NO. 8:** For the relevant period, are any of the Persons responsible for the creation of, participation in, offering of, monitoring or, and evaluation of Care Givers, LLC employee benefits, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, the same as those persons who are responsible for the same at The Sample MS and LA Defendants.
>
> **RESPONSE TO INTERROGATORY NO. 8:** Care Givers objects to Interrogatory No. 8 as overly broad and unduly burdensome. Without waiving said objections, Care Givers does not have knowledge of which, if any, employee benefits are offered by The Sample MS and LA Defendants and therefore does not have knowledge of whether the same persons might be responsible for oversight of employee benefits for The Sample MS and LA Defendants.

In the motion to compel, Plaintiff asserts that Care Givers cannot claim ignorance of what 401(k) benefits the other participating employers offer. She alleges "It is in the same plan. The benefits are governed by the same plan document. Care Givers' own employees receive the same plan terms – the same eligibility rules, the same vesting schedule, the same matching contribution formula – as the employees of every other participating employer. Care Givers did not need to investigate what benefits the Sample Defendants offer. It needed only to look at its own." Further, she contends that "Form 5500 answers the precise question Interrogatory No. 8 asked. The plan administrator for the Medico 401(k) Retirement Plan is Medico, LLC, operating through its designated signatory, Toni Parkinson, located at 762 Avery Blvd North,

14

Ridgeland, Mississippi. Toni Parkinson signed the Form 5500 on October 14, 2025, under penalties of perjury, as the plan administrator." [Doc. 131] – Exh. 18.

In addition, Plaintiff contends Medico's document production in this case further confirms the relationship Care Givers denied. Plaintiff states that Medico produced the Participation Agreement under which Care Givers participates in the plan. [Doc. 131] – Exh. 9 at 26. Plaintiff also alleges that agreement identifies Medico as the Signatory/Lead Employer with sole authority to amend, restate, or terminate the plan, authority it can exercise without any further action by Care Givers.

In response, Care Givers asserts that it has not at any time denied participating in a Medico 401(k) Retirement Plan. In fact, it admits the same in its Answer. [Doc. 14, ¶ 91]. It states that the question raised by the Interrogatory was not what retirement plans Care Givers participates in, but whether the persons responsible for multiple aspects of those plans have the same responsibilities in regard to employee benefit plans for the Sample Defendants. Care Givers states that it answered Interrogatory No. 8 truthfully by stating that it does not have knowledge as to what benefit plans the Sample Defendants offer to their employees. Nor, it contends, was it required to consult with Plan representatives to ask what other entities might participate in the multiemployer plan nor should it have been obligated to review the Form 550 Annual Return which was filed with the United States Department of Labor, not by Care Givers but by the Plan, to determine what other employers might also participate in the multi-employer plan.

Care Givers also responds that Plaintiff's assertion that Care Givers claimed to have no "knowledge about" Medico is a false statement. It asserts that what Care Givers answered in Interrogatory No. 8 is that it does not know what employee benefits Medico offers to its own employees and it would have no reason to know this. Care Givers alleges that what Plaintiff

requests the Court to Order is to require Care Givers to identify "Toni Parkinson and Medico, LLC as persons responsible for the administration of Care Givers' 401(k) plan who are also responsible for the same at the Sample Defendants." Care Givers states that it could certainly identify its participation in the Medico 401(k) retirement plan, but that participation does not give Care Givers any personal knowledge of the employee benefits (including 401(k) plans) that are being offered to employees of the Sample Defendants or who is responsible for offering or overseeing the same. As for Plaintiff's suggestion that Care Givers' response is inconsistent with the responses of the Sample Defendants, Care Givers disagrees. Care Givers states that the Sample Defendants when posed the same question stated that while they understood Care Givers participated in the Medico 401(k) retirement plan, they had no personal knowledge of the employees offered the benefits, when such benefits were offered and were "not aware of any employee benefits that may have been offered to the employees of Care Givers."

In reply, Hodges asserts that the interrogatory did not ask Care Givers to survey the Sample Defendants' benefit offerings. Instead, she alleges that it asked whether the people responsible for Care Givers' employee benefits are the same as those responsible at the Sample Defendants. Plaintiff alleges that the answer, as to the 401(k) plan, is yes, as the plan administrator is Medico, operating through Toni Parkinson. Medico is a Sample Defendant. Plaintiff alleges that Care Givers needed only to identify who administers its own plan and state whether that entity is a Sample Defendant.

In the sur-reply, Care Givers asserts that Interrogatory No. 8 did not ask Care Givers to identify its employee benefits but to identify "whether the persons responsible" for those benefits "are the same as those responsible at the Sample Defendants." It contends that is not the question of "who administers its own plan and [ ] whether that entity is a Sample Defendant." However, in

16

an effort to resolve this issue, Care Givers states that it will supplement its response to Interrogatory No. 8 to identify that it participates in a Medico 401(k) Retirement Plan, which is administered by Medico and that other Sample Defendants are understood to participate in the Medico 401(k) Retirement Plan. Care Givers states that it remains without knowledge as to the "persons responsible" for the Sample Defendants' employee benefits.

**Resolution** –

Again, Care Givers has affirmed and reaffirmed that it does not know the identity of the "persons responsible" for the Sample Defendants' employee benefits. There is simply nothing for the Court to compel. And, while, as with any demonstrated intentional false answer made under oath, it may certainly result in sanctions on proper motion, such a motion is not currently before the Court.

**Interrogatory No. 9:**

> **INTERROGATORY NO. 8:** If you answered in the affirmative to Interrogatory 8, describe the Person's role in the creation of, participation in, offering of, monitoring of, and evaluation of those employee benefits offered to Care Givers, LLC employees.
>
> **RESPONSE TO INTERROGATORY NO. 9:** Defendant does not possess information responsive to Interrogatory No. 9.

In her motion, Plaintiff asserts that the answer to Interrogatory No. 8 should have been yes, and as a result of the false predicate answer, the follow-up answer is necessarily incomplete. Plaintiff argues that Care Givers should be compelled to supplement Interrogatory No. 9 to identify Toni Parkinson, her role as Plan Administrator of the Medico 401(k) Retirement Plan, and Medico's role as Plan Sponsor and Signatory/Lead Employer with sole authority to amend, restate, or terminate the plan, authority exercised without further action by Care Givers under the Participation Agreement produced by Medico, and any other persons disclosed to provide an accurate and complete response to Interrogatory No. 8.

17

In response, Care Givers asserts that this interrogatory seeks information identical to the argument presented in Interrogatory No. 8, which it has confirmed its lack of knowledge to answer because it does not know what benefits the Sample Defendants receive or who oversees them.

In reply, as in her argument concerning Interrogatory No. 8, Plaintiff asserts the interrogatory did not ask Care Givers to survey the Sample Defendants' benefit offerings. It asked whether the people responsible for Care Givers' employee benefits are the same as those responsible at the Sample Defendants, and the answer, as to the 401(k) plan, is yes. According to Plaintiff, the plan administrator is Medico, LLC, operating through Toni Parkinson. Medico, LLC is a Sample Defendant. The same entity and the same individual administer the 401(k) for Care Givers and for the Sample Defendants. Care Givers needed only to identify who administers its own plan and state whether that entity is a Sample Defendant.

By sur-reply, Care Givers acknowledges that it participates in the Medico 401(k) retirement plan and other Sample Defendants are understood to, as well. However, it reaffirms its answer that it remains without knowledge as to the "persons responsible" for the Sample Defendants' employee benefits.

**Resolution –**

Care Givers' answer is clear: it does not know who is responsible for the Sample Defendants' employee benefits. On this sworn record, the court cannot compel it to, in effect, swear affirmatively to the contrary.

18

**Interrogatory No. 11:**

> **INTERROGATORY NO. 11:** Identify any and all employees, services, records, and Care Givers, LLC shares or has shared during the relevant period with The Sample MS and LA Defendants.[11]
>
> **RESPONSE TO INTERROGATORY NO. 11:** Care Givers objects to Interrogatory No. 11 as overly broad and unduly burdensome. Without waiving stated objections, as to Desoto Community Care Center, LLC; Madison Community Care Center, LLC; Magee Community Care Center, LLC; Medico, LLC; Community Care Center of Destrehan, LLC; Community Care Center of Hammond, LLC; Kenter, LLC; Oaks of Houma Community Care Center, LLC; Versailles Healthcare, LLC, none. As to Administrative Systems, Inc., Care Givers does not "share" any employee, services, records or equipment; however, Administrative Systems, Inc. provides certain services to Care Givers whereby Care Givers shares access to certain of its records as necessary for Administrative Systems, Inc. to effectuate the service lines provided.

In its motion to compel, Plaintiff insists Care Givers and the sample Defendants share services and records with ASI because "ASI is a centralized operation processing payroll for the nursing home facilities from a single office, staffed by employees of ASI and its subsidiary working side by side." Plaintiff bases this allegation on the purported facts that all nine nursing home facilities host the identical employment application, that all nine facilities also host the identical compliance document titled "Keeping Residents Safe – Use of Enhanced Barrier Precautions," each uploaded in a folder path reflecting April 2024, the same calendar month. Plaintiff also alleges this document appearing across all nine subsites within a single WordPress Multisite

---

[11] Contrary to Plaintiff's counsel's assertions, the Court did not specifically select the term "shared" when it allowed modified jurisdictional discovery., "Shared" was already part of the proposed discovery requests written by the Plaintiff's counsel:

Plaintiff's proposed Interrogatory: "Identify any and all Employees, Services, Records, and Equipment [LA Defendants] currently Shares or has Shared with any other named Defendant."

Court's modified Interrogatory: "Identify any and all employees, services, records, and equipment [insert here the name of one of the 5 selected LA Defendants] shares or has shared during the relevant period with Care Givers, LLC."

network, uploaded in the same monthly cycle, is a document distributed centrally by a single administrator to all nine facilities simultaneously, which she believes qualifies as a shared record.

As for shared equipment, Plaintiff asserts that the web servers running all nine facility websites are not nine separate pieces of equipment but are a single shared resource Care Givers and the eight Sample Defendant facilities share: centralized email through ASI's private domain; centralized payroll processing through ASI; identical employment applications and compliance documents distributed through the shared web network; and payroll records maintained by ASI for all nine facilities.

In response, Care Givers argues what Plaintiff identifies in the motion is that Care Givers and the Sample Defendants use the same service provider—which provides things such as an email domain and payroll services. It also asserts Plaintiff goes on to describe what one would expect from a payroll provider—that ASI has accounting and payroll people in its office building, that they cover payroll for nursing homes and they "do ledgers." But Care Givers asserts this does not describe a shared service between Care Givers and the Sample Defendants. The fact that ASI provides sample employment applications, compliance documents, or other employee policies or procedures to multiple nursing facilities as part of the services it provides does not make these documents "shared records." According to Care Givers, these facts merely reflect that a service provider distributes sample documents to multiple entities, which it provides for each entity's individual use. Care Givers has no information as to whether any of the Sample Defendants implement or use any of the sample forms, much less does it "share" records with the Sample Defendants.

In regard to "equipment," Care Givers notes that Plaintiff argues that a single server hosts the websites of Care Givers and the Sample Defendants and that this is "shared equipment" but

Care Givers has no knowledge of whether other entities, who might also receive services from the same vendor, use the same server to host their websites, and it had no duty to inquire into the same. That is notwithstanding the fact that Care Givers asserts it does not believe that this is considered sharing equipment. Care Givers maintains its position that, based on its knowledge, it is not aware of any "equipment" that it shares with any of the Sample Defendants.

Care Givers also notes that the Sample Defendants have responded to an identical request, confirming they do not share any service, records or equipment with Care Givers. Care Givers asserts that Plaintiff disagrees with the truthfulness of the responses of both Care Givers and the Sample Defendants, who have confirmed there are no shared services, records or equipment. [Docs. 131] - Exh. 4, 10, 11. Finally, Care Givers reaffirms it "has fully answered Interrogatory No. 11 and there is nothing further to compel." [Doc. 140] at 13.

In her reply, Hodges offers a three-part argument to the effect that ASI holds a centralized account, and the sample facilities operate within it. The same pattern extends to email (the @asimgt.com domain used by all facilities), web hosting (a single WordPress Multisite installation under one WP Engine account), and employee records (maintained by ASI for all facilities). Accordingly, Hodges believes these are "shared".

By sur-reply, Care Givers asserts that "Plaintiff's argument that Care Givers 'shares services, records, and equipment' with the Sample Defendants is a statement of her belief as to how ASI sets up access to the services it administers to the various entities with whom it contracts to provide services." [Doc. 153] at 11. Care Givers further argues that "[e]ven if ASI, for example, utilizes one WP Engine account to provide website services for multiple entities for which it performs services via separate contracts, that does not make the account shared equipment." *Id.* In particular, Care Givers denies that Plaintiff's reliance on a screenshot of an employee of a

21

Defendant nursing home actually evidences a shared service between Care Givers and a Sample Defendant. Care Givers argues the same is true of Plaintiff's reliance on a table of different login subdomains for multiple nursing facilities which she contends is administered by ASI for monthly mandatory in service training—they do not evidence shared services between Care Givers and the sample Defendants.

**Resolution –**

The issue with respect to this interrogatory is a disagreement between the parties as to whether the provision by ASI of services to multiple defendants, including Care Givers, constitutes a "sharing" of the same between them. Care Givers insists that is not the case, and on this record, there has been no showing that Care Givers' answer is, in fact, evasive or incomplete. However, of note to the Court is Care Givers' repeated reference in response to this interrogatory, to the effect that Plaintiff's argument that Care Givers "shares services, records, and equipment with the Sample Defendants is a statement of her belief as to how ASI sets up access to the services it administers to the various entities *with whom it contracts to provide services.*" [Doc. 153] at 11 (emphasis added). And, the statement that "even if ASI, for example, utilizes one WP Engine account to provide website *services for multiple entities for which it performs services via separate contracts,* that does not make the account shared equipment." *Id.* (emphasis added).

In light of Care Givers' repeated affirmation that it does not have a contract with ASI to provide it services, these statements require some further explanation. Specifically, Care Givers is required—by supplement to its response to Interrogatory No. 3—to state whether it is one of the "various entities with whom ASI contracts to provide services" and/or is one of the "multiple entities with whom ASI performs services via separate contracts." If its answer is, again, that it does not contract with ASI, it should explain generally who the "multiple or various entities" are

22

to whom it makes reference in this interrogatory response, and explain the distinction between such entities for whom it asserts ASI provides services pursuant to contract and Care Givers, who it denies it is provided such services pursuant to a contract with ASI. **The required supplementation shall be made within seven (7) days of the date of this Order.**

By way of motion to compel, Plaintiff also challenges Defendant's responses to certain requests for production, namely Nos. 5, 1, 2, 6 and 9. Each is addressed below.

**Request for Production No. 5**

> **REQUEST FOR PRODUCTION NO. 5:** Produce a redacted sample of Plaintiff Hodges paystubs and time records, if any, from or by Care Givers, LLC, with enough information to determine (1) her workweek, if any with Care Givers, LLC, (2) the total hours, if any, she worked during the workweek; (3) the total remuneration for employment, if any, paid to her for the workweek; and (4) the total overtime compensation, if any, paid to her for the workweek.

> **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:** Care Givers objects to Request No. 5 as it is not relevant to the topic of the limited discovery as allowable pursuant to the Court's Order of January 20, 2026, which allows for discovery as to Care Givers "as it relates to its involvement, if any, with each of the 5 Mississippi defendants and the 5 Louisiana defendants Plaintiff chooses to seek discovery from." Plaintiff Hodges paystubs and time records associated with her employment relationship with Care Givers has no relevance to the involvement of Care Givers to The Sample MS and LA Defendants.

In her motion to compel, Plaintiff asserts her paystubs are direct evidence of the Care Givers–ASI nexus. She argues that they will show what entity processed her payroll, what payroll system generated her pay records, and whether the format, structure, and identifying information on those records is consistent with the centralized payroll infrastructure that ASI administers for all participating facilities. A paystub generated from ASI's payroll system is a

23

document that, on its face, demonstrates Care Givers' involvement with a Sample Defendant—which is precisely the subject matter the Court authorized Plaintiff to explore.

Care Givers argues that copies of Ms. Hodges' pay records will not provide additional information because it has already admitted that ASI provides payroll services, but Plaintiff's counsel asserts that ASI "provides payroll services" is not the same as the documentary evidence showing what that means in practice.

In response, Care Givers reasserts it position that because this information has no bearing on the relationship between Care Givers and the Sample Defendants, it does not relate to the jurisdictional question before the Court.

By reply, Hodges insists the paystubs are direct, documentary evidence of the Care Givers–ASI relationship and further argues they are a finite number of documents for a single employee and the burden of producing them is negligible.

By sur-reply, Care Givers simply reiterates its objection to production on the basis of relevancy to the jurisdictional issues in dispute.

**<u>Resolution –</u>**

I find the relevance objection not to be meritorious. ASI is a Sample Defendant, and the Court permitted discovery of matters on the issue of any alleged Defendant's (such as ASI's) economic relationship with Plaintiff's employer, Care Givers. As such, I find that wage and related information regarding Plaintiff, if any, generated maintained or controlled, in whole or part, by ASI to be discoverable. This is particularly so here where only an sampling of documents is sought and the burden of production is negligible. **Production shall be made no later than seven days from the date hereof.**

**REQUEST FOR PRODUCTION NO. 1:** If your answer to Interrogatory 2 was in the affirmative, produce all documents reflecting the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:** Care Givers did not answer Interrogatory 2 in the affirmative and is not aware of any documents responsive to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 2:** If your answer to Interrogatory 3 was in the affirmative, produce all documents reflecting the same.

**RESPONSE TO REQUEST NO. 2:** Care Givers did not answer Interrogatory 3 in the affirmative and is not aware of any documents responsive to Request for Production No. 2.

**REQUEST FOR PRODUCTION NO. 6:** Produce all documents concerning any employee benefit, including but not limited to cafeteria plans, 401(k) plans, and vision, dental, and health insurance plans, that are the same as were offered, during the relevant period to both Care Givers, LLC employees and The Sample MS and LA Defendants employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:** Care Givers is not aware of what employment benefit is or was offered to any employee of The Sample MS and LA Defendants; therefore, none.

**REQUEST FOR PRODUCTION NO. 9:** For the relevant period, produce all documents concerning the procurement, negotiation, or modification of any of Care Givers, LLC loans, lines of credit, guarantees, or other borrowings, that also involved The Sample MS and LA Defendants including but not limited to any arrangements with JP Morgan Chase Bank.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:** None.

By way of motion to compel, Plaintiff incorporates her arguments made in support of her motion to compel responses to the interrogatories that correspond with each of the forgoing documents requests, and for its part, Care Givers does likewise in response. In other words,

Plaintiff insists that "[b]ecause the underlying denials are contradicted by the record, responsive documents necessarily exist." Care Givers, on the other hand, asserts "it did not produce documents in response to Request for Production Nos. 1, 2, 6 and 9 because there are no documents responsive to the requests since there was no information responsive to the corresponding interrogatory. Care Givers simply insists it fully answered Requests for Production Nos. 1, 2, 6 and 9. "Defendant cannot produce what it does not possess. Care Givers has fully answered Requests for Production Nos. 1, 2, 6 and 9."

**<u>Resolution –</u>**

Inasmuch as each of these requests for production at issue is linked to a corresponding interrogatory that Care Givers has affirmatively denied having knowledge responsive to, there is nothing for the Court to compel on the current record.

Finally, the Court will address Care Givers' contention that Plaintiff should have requested a discovery conference before filing the instant motion to compel; Plaintiff's contention that Defendant has waived all objections to the discovery made; and Care Givers' response, by sur-reply, to the Court's requirement that "*if and to the extent*, any information or documents that are otherwise responsive to the discovery at issue in the motion to compel have been withheld or not disclosed by Care Givers on the basis of any objection asserted to any such discovery request, Care Givers identify the discovery request(s) concerned and the asserted objection(s) relied on by it for such information or document's non-disclosure."

First, as for whether the Plaintiff requested a discovery conference to discuss Care Givers' responses to its discovery prior to filing the instant motion, it would appear to the Court—as it has undertaken to outline at the outset of this opinion—that though Plaintiff's counsel believed he sent a copy of his February 26th and March 9th, 2026, letters discussing the same to the Court, the only

letter received from him in chambers before the March 16th conference previously set, *sua sponte,* by the Court to discuss case status, was sent on Thursday evening, March 12, 2026, and did not, with the exception of references to the ASI agreement and Plaintiff's paystubs, discuss the issues concerning Care Givers' prior discovery responses. Instead, it outlined *additional* discovery Plaintiff's counsel sought to propound to Care Givers. In any event, I find in this instance, this circumstance to have been essentially harmless, particularly given the volume of discovery and disputes at issue already in connection with this lawsuit involving over 40 different legal entities across two states.

As for Plaintiff's assertion that Care Givers' objections to the discovery request be deemed waived as boilerplate or too vague, Plaintiff's motion to compel does not identify which particular discovery responses contained which objections that it takes issue with, making it impossible to address the same in the context of the particular discovery request(s) that is/are at issue.

Lastly, with regard to requirement made of Care Givers by the Court that it identify by sur-reply information or documents, if any, that were withheld or not disclosed based on any objection asserted. The Court notes Care Givers has answered that none were withheld on the basis of an asserted objection, instead, they were withheld on the basis that no information or documents were produced because there were none responsive to such request or inquiry.

**Conclusion**

For the reasons stated above, Plaintiff's motion [Doc. 131] is granted in part and denied in part. The required supplementation and production outlined herein shall be made within seven (7) days of the date of this order.

**SO ORDERED AND ADJUDGED**, this the 27th day of April, 2026.

/s/ Jane M. Virden

**UNITED STATES MAGISTRATE JUDGE**

27