**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

LACUNYA HODGES, on behalf of
herself and all others similarly situated                                  PLAINTIFF

v.                                                   CIVIL ACTION NO. 4:25-cv-92-JDM-JMV

ADMINISTRATIVE SYSTEMS, INC., et al.                                   DEFENDANTS

**<u>MEMORANDUM OPINION AND ORDER</u>**

In this Fair Labor Standards Act (FLSA) collective action, Plaintiff Lacunya Hodges seeks to bring on behalf of a putative class an overtime wage claim against not only her employer, Care Givers, LLC, but also forty-four other defendants. She reasons that, because the other defendants either have some type of common ownership, use the same payroll and management services, or are otherwise corporately related, they ultimately form one big company and thus are all her employer.

But that is not how FLSA liability works.

Being part of a common enterprise goes to the question of FLSA *coverage*—that is, whether the plaintiff's employer is sufficiently engaged in commerce to trigger the FLSA's minimum-wage and overtime provisions.[1]

But FLSA *liability* is a different consideration.[2] Employers are liable only to *their* employees under the FLSA. An employer is not "liable for the employees of a separate entity in

---

[1] *Austin v. Onward, LLC*, No. 3:14-0350, 2015 WL 12940029, at *6 (S.D. Tex. Apr. 2, 2015) (citing *Patel v. Wargo*, 803 F.2d 632, 636-37 (11th Cir. 1986); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969 (5th Cir. 1984)).

[2] *Id.*

the enterprise."[3]  So for FLSA liability, there must be an employer-employee relationship with each purported employer.[4]  An employer-employee relationship with just one entity in the enterprise is not enough to make other entities in the same enterprise joint employers.

Hodges has consistently insisted—through her complaint and her briefs opposing dismissal of the other defendants—that these other forty-four defendants essentially form one entity with her employer Care Givers, LLC.  And as she sees it, they are all her employer.  But Hodges has not alleged or put forth evidence that any defendant other than Care Givers, LLC, as a matter of economic reality, was in an employer-employee relationship with her.

Without an employer-employee relationship, Hodges's sole alleged injury—deprivation of overtime wage—cannot be traceable to any entity other than her employer, Care Givers, LLC.  So Hodges lacks standing to bring an FLSA overtime wage claim against any defendant but Care Givers, LLC.  All named defendants other than Care Givers, LLC, are hereby DISMISSED.

**Procedural History**

I.      **Hodges's FLSA Complaint**

On June 23, 2025, Hodges filed a collective-action complaint "on her own behalf and on behalf of several thousand other employees, challenging Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*"  [1]

Until June 2023, Hodges worked as a certified nursing assistant at Care Givers, LLC, which she described as "one of the facilities operated by the Defendants in Coahoma County, Mississippi."[5]  According to Hodges, she and other hourly, non-exempt employees frequently

---

[3] *Patel*, 803 F.2d at 636.
[4] *Id.* at 637.
[5] Care Givers, LLC, is the only named defendant that operates a nursing facility in Coahoma County, Mississippi.

2

worked more than forty hours a week but were systematically deprived of the overtime pay they were due under 29 U.S.C. § 207.

Hodges named as defendants not only Care Givers, LLC, but also forty-two other limited liability companies that each own and operate an individual nursing home. Sixteen of the LLCs are Mississippi companies. And twenty-six of the LLCs are in Louisiana. Hodges also named as defendant Administrative Systems, Inc. (ASI)—a Mississippi corporation she claims "provides administrative and payroll services, including the computation and payment of overtime, to the other Defendants." And she also sued Medico, LLC—a Mississippi company she alleged "serves as the . . . sponsor" of the nursing home defendants' 401(k) plan.

Hodges devotes a significant portion of her complaint to "Joint Employer Allegations." She asserts "the Defendants," though distinct legal entities, are under common ownership and control of one family—the Beebe family. She alleges the Beebe family owns and operates more than fifty nursing homes in Mississippi and Louisiana, each established as a separate LLC. The complaint recognizes the "technical separateness" of each defendant nursing home but contends they are really one large company. And Hodges suggests various Beebe family members have acknowledged these nursing homes were created as separate entities for liability purposes.

The complaint then provides several examples of the alleged interrelatedness of the forty-three separate nursing homes, ASI, and Medico. Hodges does this to push her theory that all forty-five defendants are "ultimately one large company." And this big company "jointly shares the authority and responsibility to hire and fire employees at the nursing home facilities, to supervise the work schedules at the nursing home facilities, and to determine the rate and method of pay at the nursing home facilities." Cited examples included the nursing homes' use of standardized employee forms and handbooks and each nursing home listing ASI president Toni Parkinson as

3

their "corporate officer" to the Centers for Medicare and Medicaid Services. She also points to the nursing homes' common participation in Medico's 401(k) retirement plan and their administrators' use of email addresses ending in @asimgt.com.

## II.     Defendants' Motions to Dismiss

All defendants but Care Givers, LLC, moved to dismiss, arguing they were not Hodges's employer. [17, 18, 19] For simplicity, this Order will refer to them collectively as the Moving Defendants.

The Moving Defendants assert this Court lacks subject matter jurisdiction over them because Hodges has no standing to pursue an FLSA collective action against them. They also argue Hodges has failed to allege a plausible FLSA claim against them. The Louisiana LLCs additionally claim this Court lacks personal jurisdiction over them. [17]

In response, Hodges argued her "joint employer allegations" were sufficient for both standing and a plausible FLSA claim against all defendants. [75, 76, 77] Alternatively, she requested jurisdictional discovery and/or leave to amend her complaint.

## III.     Jurisdictional Discovery & Supplemental Briefing

Hodges then filed a formal motion to lift the stay triggered by the motion to dismiss's assertion that the court lacked jurisdiction. [69] Hodges sought to conduct what she described as "limited jurisdictional discovery." The Court granted her request in part, permitting limited discovery related to establishing standing based on the employer-employee relationship and to establish personal jurisdiction over the Louisiana defendants. [107]

At the close of jurisdictional discovery, the Court ordered supplemental briefing in support and opposition to the still-pending motions to dismiss. [130]

The Moving Defendants argued the jurisdictional discovery confirmed they were not Hodges's employer in any real economic way. In particular, Medico and ASI argued that providing the same or similar administrative services to Care Givers, LLC, and the other named nursing homes is not evidence of the type of control required over the employment relationship to establish either of them as Hodges's employer.

Hodges on the other hand slightly changed tactics in her supplemental brief. She zeroed in on the phrase "organized group of persons" found in the FLSA's definition of "person," 29 U.S.C. § 2093(a). And she argues this phrase supports the concept of "single employer" liability, not joint employer liability. She maintains that, because the defendants are an organized groups of entities, they form one person "operating a coordinated enterprise." [150]

With the issues *thoroughly* briefed, the Court is ready to rule.

### Rule 12(b)(1)

As a preliminary matter, the Moving Defendants asserted two procedural avenues for dismissal—a Rule 12(b)(1) motion to dismiss based on lack of standing and a Rule 12(b)(6) motion to dismiss for failure to state a claim against them.[6] The Court proceeds under Rule 12(b)(1).

Not only must jurisdictional attacks be resolved before the Court can consider merits-based challenges. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). But also, in a collective action like this one, standing issues must be resolved before a class is certified.[7]

---

[6] Because this Court finds it lacks subject matter jurisdiction over the Moving Defendants, it does not address the Louisiana LLCs' contention that this Court also lacks personal jurisdiction over them.

[7] The Court finds Hodges lacks standing to name the Moving Defendants in her FLSA collective action. So it need not address the Moving Defendants' alternative Rule 12(b)(6) motion for failure to state a claim. That said, in her supplemental brief Hodges argued for the first time that the factual questions underlying the jurisdictional challenge are so intertwined with the merits that this Court must assume jurisdiction and resolve the pending dispute on the merits. This is an about face from Hodges's assertion, in her motion to partially lift the stay, that jurisdictional issues

*Lucas v. BMS Enterps., Inc.*, No. 3:09-cv-2159-D, 2010 WL 2671305, at *2 (N.D. Tex. July 1, 2010) (citing *Rivera v. Wyeth-Ayerst Lab'ys.*, 283 F.3d 315, 319 (5th Cir. 2002)).

In their Rule 12(b)(1) motion, the Moving Defendants lodge a factual—as opposed to facial attack—on Hodges's standing to bring an FLSA claim against them. In a factual attack, the Court can consider not only the complaint but also undisputed and disputed evidence in the record. *Wheeler v. Wiliams*, No. 4:17-cv-96-SA-JMV, 2018 WL 6204444, at *2 (N.D. Miss. Nov. 27,

---

had to be resolved first, hence the need for *jurisdictional* discovery. Further, the cases Hodges cites to urge the Court to simply "assume" jurisdiction over intertwining merits issues do not involve Article III standing and thus do not apply. *E.g.*, *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). Even so, the Court notes the result would be the same under Rule 12(b)(6).

A Rule 12(b)(6) motion aims directly at the allegations in the complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To state a prima facie overtime-pay claim under 29 U.S.C. § 207(a)(1), a plaintiff must plausibly allege: (1) that an employer-employee relationship existed during the time that she worked in excess of forty hours per week; (2) that she engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due." *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 309 (5th Cir. 2021) (citing *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (collecting cases)).

The Court does not go outside the complaint or resolve any disputed facts but instead accepts "all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). But the Court will "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

Looking strictly at the complaint, Hodges's only allegation that the Moving Defendants are her employer is her completely conclusory suggestion that all defendants, because of their corporate relatedness, form one single entity for FLSA purposes. The Court need not accept this conclusory statement as true—especially because, as explained in the following sections, it is contrary to law. So in addition to Hodges's lacking standing against the Moving Defendants, her complaint fails to state an FLSA claim against them because it does not plausibly allege they were her employer. Further, any request to amend her complaint would be futile. After six months of jurisdictional discovery and supplemental briefing, Hodges has doubled down on her contention that corporate relatedness among the Moving Defendants and Care Givers, LLC, is sufficient to establish an employment relationship with her. And this is simply not so.

2018) (citing *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016)).  The burden is on the plaintiff to prove jurisdiction exists.  *Id.*  "To have standing, a plaintiff must suffer (1) an injury in fact (2) that is caused by the defendant and (3) is redressable by a favorable determination of the case."  *Johnson v. City of Yoakum, Texas*, No. 6:19-cv-00011, 2025 WL 2411605, at *6 (S.D. Tex. Aug. 19, 2025) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  And to satisfy the causation element, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct[.]"  *Allen v. Wright*, 468 U.S. 737, 751 (1984).

### Discussion

Before delving into the Moving Defendants' 12(b)(1) motions and their arguments against Hodges's complaint, it is important to understand the nature of Hodges's collective action—what she seeks to accomplish by naming all forty-five defendants as her single "joint employer." Second, there is a need to define the terms.  In both her complaint and her arguments opposing the motions to dismiss, Hodges says things like "joint employers," "family business," "one large company," "unified integrated business," and "organized group."  And it's important to understand how those concepts apply—or don't apply—to FLSA analysis.

### I.      FLSA Collective Action

Under the FLSA, "[a]ny employer who violates the provisions of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  And the FLSA permits an employee to maintain an action against her employer not only on her behalf but "other employees similarly situated."  *Id.*  "[B]ut the other employees do not become plaintiffs in the action unless and until they consent in writing."[8]  *Sandoz*

---

[8] As the Fifth Circuit noted in *Sandoz*,

*v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) (citing 29 U.S.C. § 216(b); *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243-44 (11th Cir. 2003) (per curiam)).

It is no huge leap to assume that Hodges's naming forty-three individual nursing homes and two other related entities as defendants, as opposed to just Care Givers, LLC, significantly widens the pool of potential opt-in plaintiffs. But it does not relieve her of the constitutional standing requirement. *Lucas*, 2010 WL 2671305, at *2. Just as in a class action, "[t]he requirement of standing is not lessened" for the named plaintiff in a collective action.[9] *Id.* at *2 (citing *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981)). And "under the general principles of standing, a litigant may not merely champion the rights of another." *Id.* (quoting *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008)). Rather, "a plaintiff must establish that he has a personal stake in the alleged dispute, and that the alleged injury suffered is *particularized as to him*." *Id.* (quoting *Audler*, 519 F.3d at 248). This means a named plaintiff in a collective action "must meet every element of standing *as to each defendant*, including alleging that they were injured by each defendant named in the suit." *Id.* (emphasis added).

---

> [C]ollective actions typically proceed in two stages. First, the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action. Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly-situated employees who have opted in. If so, the collective action may proceed, and if not, the court must dismiss the opt-in employees, leaving only the named plaintiff's original claims.

*Sandoz*, 553 F.3d at 915 n.2 (internal citations omitted).

[9] The opt-in, as opposed to the opt-out, requirement is what makes an FLSA collective action different from a class action. But the standing requirement is the same. *Lucas*, 2010 WL 2671305, at *3.

It is just not enough that the Moving Defendants employed potential opt-in plaintiffs to this action who allegedly have suffered the same failure-to-receive-overtime-wages injury as Hodges. *Id.* at *2. Instead, to adequately plead standing, Hodges had to allege an injury that each defendant caused *her*. *Richard v. Flower Foods, Inc.*, No. 15-02557, 2016 WL 6539144, at *5 (W.D. La. Oct. 13. 2016) (citing *Audler*, 519 F.3d 239). And "[u]nder the FLSA, alleged employees' 'injuries are only traceable to, and redressable by, those who employed them.'" *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (quoting *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 412 (D. Md. 2013)).

## II.     Single Enterprise versus Joint Employer

To be sure, the FLSA contemplates that an employee like Hodges can have more than one employer. *Howard v. John Moore, L.P.*, Civ. A. No. H-13-1672, 2014 WL 5090626, at *3 (S.D. Tex. Oct. 9, 2014) (citing 29 C.F.R. § 791.2); *see also Falk v. Brennan*, 414 U.S. 190, 194 (1973) (affirming that both building owner and management company were "employers" of maintenance workers). Hodges's entire complaint is premised on her assertion that all forty-five defendants are "joint employers." But though she repeatedly uses the term joint employer, it does not mean what she thinks it means.

Simply put, "joint employer" is not synonymous with common enterprise. Hodges consistently argues all forty-five defendants are "joints employers" because they ultimately are one company acting as a unified business. Not only is Hodges's argument logically inconsistent— something can't be "joint" and "unified" at the same time. But it is also contrary to a bevy of caselaw that explains that, for FLSA purposes, the theory that multiple entities comprise a "single enterprise" is a distinct concept from the type of "joint employment" that creates FLSA liability. *E.g.*, *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 517-18 (1973); *Chao v. A-One Med. Servs.*,

*Inc.*, 346 F.3d 908, 917 (9th Cir. 2003); *Patel v. Wargo*, 803 F.2d 632, 635-37 (11th Cir. 1986); *Donavan v. Grim Hotel, Co.*, 747 F.2d 966, 970-72 (5th Cir. 1984); *Arif v. Bashir*, No. 4:20-cv-2704, 2021 WL 1147582, at *3-5 (S.D. Tex. Mar. 10, 2021); *Biziko v. Van Horne*, No. 1:16-cv-0111-BP, 2019 WL 3928575, at *13 (N.D. Tex. Aug. 20, 2019), *report and recommendation adopted*, No. 1:16-cv-111-C, 2019 WL 4192458 (N.D. Tex. Sept. 4, 2019), *aff'd*, 981 F.3d 418 (5th Cir. 2020); *Williams v. Superior Hosp. Staffing Inc.*, Civ. A. No. 18-2793, 2019 WL 118013, at *4 (E.D. La. Jan. 7, 2019); *Joaquin v. Coliseum Inc.*, No. A-15-cv-787-LY, 2016 WL 3906820, at *5 (W.D. Tex. July 13, 2016), *approved sub nom.*, *Joaquin v. Hinojosa*, 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016)); *Austin v. Onward, LLC*, No. 3:14-0350, 2015 WL 12940029, at *6 (S.D. Tex. Apr. 2, 2015); *Howard*, 2014 WL 5090626, at *4; *Lucas*, 2010 WL 2671305, at *3 n.8; *Alvarez v. 9ER's Grill @ Blackhawk, L.L.C.*, Civ. A. No. H-08-2905, 2009 WL 2252243, at *3 (S.D. Tex. July 28, 2009).

In the FLSA context, the enterprise theory, also described as the single or common enterprise theory, "*only applies* to the question of whether a named defendant is sufficiently large to be governed by the Act." *Biziko*, 2019 WL 3928575, at *13 (emphasis added) (citing *Joaquin* 2016 WL 3906820, at *5). FLSA "coverage is determined in part by an annual dollar volume test." *Patel*, 803 F.2d at 635 (citing 29 U.S.C. § 206(a); *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984); *Brennan v. Veteran's Cleaning Serv., Inc.*, 482 F.2d 1362 (5th Cir. 1973); *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296 (5th Cir. 1969)). So "showing that two entities constitute an enterprise" is relevant to determining if the annual dollar volume test is met—and thus FLSA coverage exists. *Id.* As the Eleventh Circuit has observed, the FLSA's "legislative history clearly states the congressional purpose to expand the coverage of

10

the Act, i.e., to lump related activities together so that the annual dollar volume test for coverage would be satisfied." *Id.*

A prime example of this is *Donavan v. Grim Hotel*, 747 F.2d 966—the Fifth Circuit opinion Hodges insists controls. In that case, the Secretary of Labor brought FLSA overtime wage claims against five individually incorporated but related hotels. *Id.* at 968. The five hotels argued they each were too small to have sufficient revenue to be considered an enterprise engaged in commerce. *Id.* at 969. So the FLSA's overtime requirements did not apply. The Fifth Circuit disagreed. It found the hotels could not rely on separate incorporation to splinter business activities and thereby avoid the FLSA's overtime requirements. *Id.* at 971. Instead, for purposes of the annual dollar volume test, the five hotels were considered as one enterprise that was sufficiently large enough to have to pay overtime. *Id.* at 970-71.

Here, *if* the Moving Defendants had each argued they were not sufficiently large enough individually to fall within the FLSA's overtime requirements, then the allegation that they formed a large common enterprise would certainly be relevant. But FLSA *coverage* has not been contested. Instead, the motions to dismiss raise the FLSA *liability* issue. And the single enterprise theory does not apply to the issue of FLSA *liability*.

"FLSA *liability* is predicated only on an employee-employer relationship, not on defendants' involvement in a common enterprise." *Lucas*, 2010 WL 2671305, at *3 n.8 (citing *Patel*, 803 F.2d at 637). The FLSA "imposes an obligation on each employer in an enterprise to appropriately pay 'each of *his* employees.'" *Alvarez*, 2009 WL 2252243, at *3 (quoting *Patel*, 803 F.2d at 635). But "[t]he legislative history contains no hint that Congress intended to make employers liable for the employees of a separate entity in the enterprise." *Patel*, 803 at 636. In other words, the theory of a common enterprise or single employer "is in fact not recognized as

11

being applicable to determining who the 'employer' is for FLSA cases." *Joaquin*, 2016 WL 3906820, at \*5.

The FLSA's definition of employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The Fifth Circuit applies the "economic reality" test to determine if an employer-employee relationship exists. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). Under the economic reality test, employer status may be established if the individual or entity: "(1) possessed the authority to hire or fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)). "No one factor is dispositive, but rather, the determination is based 'upon the circumstances of the whole activity.'" *Howard*, 2014 WL 5090626, at \*4 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

"[T]wo or more employers may stand in relation to an employee at the same time." *Id.* at \*3 (citing 29 C.F.R. § 791.2). But "[i]n cases where a plaintiff alleges to be employed by more than one employer, the court must apply the economic reality test *to each individual or entity alleged to be an employer*." *Id.* (emphasis added) (citing *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir.1990)). That means, in cases where more than one entity is alleged to be an employer, what controls is whether the purported joint employer—based on the economic reality test—is in an employer-employee relationship with the plaintiff. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Joaquin*, 2016 WL 3906820, at \*2-3.

In *Donovan v. Grim Hotel Co.*, the Fifth Circuit—after finding the five hotels formed one enterprise—went on to examine whether the common president of each hotel corporation was an "employer." 747 F.2d at 971-72. The Fifth Circuit focused on the "economic realities" of

employment. *Id.* at 972. Thus, *Grim Hotel* actually underscores two things—"enterprise" is a different category than "employer." And that, when it comes to being an employer, the economic reality test controls.

Contrary to Hodges's assertion, being part of a single enterprise does *not*, itself, make an entity related to the employer a joint employer. That wrongly puts the cart before the horse. "[A] party must plead at least an employment relationship with each employer before the issue of joint employment may be determined." *Joaquin*, 2016 WL 3906820, at *3. So a defendant must first be an employer before it can be a joint employer. It does not work the other way around. That's why Hodges cannot rely on her allegation that the Moving Defendants are joint employers to establish they were her employers.

Only in a "horizontal" joint employment case does the employers' purported relationship become relevant. But in a "horizontal" joint employment case, it is a *given* the plaintiff has more than one employer. And the issue is whether the two or more employers are sufficiently related so that the hours the employee works for each employer in a given week must be aggregated for overtime purposes. *E.g., Wirtz v. Hebert*, 368 F.2d 139, 141 (5th Cir. 1966) (discussing *Mitchell v. Bowman*, 131 F. Supp. 520 (M.D. Ala. 1954)).

That is what distinguishes Hodges's allegations from the "horizontal joint employer" cases she cites. *Cook v. Miss. Farm Bureau Cas. Ins. Co.*, No: 1:18-cv-0076-GHD-DAS, 2018 WL 5929629 (N.D. Miss. Nov. 13, 2018); *Britt v. Miss. Farm Bureau Cas. Ins., Co.*, No. 1:18-cv-00038; 2018 WL 4356589 (N.D. Miss. Sept. 11, 2018). In both cited cases, the named plaintiff sold insurance for three different companies. Only *after* the court concluded the named plaintiff plausibly alleged an employer-employee relationship existed with each of the three defendants did the court look to whether the insurance companies were sufficiently associated or related to be

13

considered horizontal joint employers. *Cook*, 2018 WL 5929629, at \*3-4; *Britt*, 2018 WL 4356589, at \*2-4. And because they were joint employers, the hours the named plaintiff worked for all three companies weekly could be added together to establish his overtime claim. *Cook*, 2018 WL 5929629, at \*5; *Britt*, 2018 WL 4356589, at \*4.

Here, *if* Hodges had alleged she simultaneously worked at two or more Beebe-family owned nursing facilities each week but was not paid overtime because she worked less than forty hours at each facility, then the common ownership and management of the nursing homes would be relevant in determining horizontal joint employment. And in that scenario, there would be no question that each of the facilities where she worked was her employer.

But Hodges makes zero allegations of horizontal joint employment. Indeed, her complaint alleges she worked at only one facility, Care Givers, LLC. So the association among the named defendants is not relevant. Instead, what controls is "'the economic realities of the relationships between' the employee and the purported joint employer." *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2018 WL 934545, at \*4 (N.D. Cal. Feb. 16, 2018) (quoting Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div., 2016 WL 284582, at \*4 (Jan. 20, 2016)). The Fifth Circuit has been clear—"In cases where there may be more than one employer, this court 'must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.'" *Gray*, 673 F.3d at 356 (quoting *Graves*, 909 F.2d at 1556).

To sum it up, Hodges's strident assertions and evidence of a single enterprise or organized group are simply *not relevant* to the standing question. As one district court in this circuit aptly put it, "[t]he FLSA concept of 'enterprise' does not abrogate the need for the plaintiff to show that he suffered injury at the hands of each individual defendant, *even if the defendants are related*

14

*corporations*." *Lucas*, 2010 WL 2671305, at \*3 n.8 (emphasis added). Rather, what matters is whether Hodges has alleged an injury traceable to each defendant because they each—as a matter of "economic reality"—are her employer.

### III. Economic Reality Test

When properly framed, the deeply contested issue between Hodges and the Moving Defendants becomes less complicated.

#### A. *Nursing Home Defendants*

Starting with the forty-two nursing home defendants, despite Hodges labeling them as joint employers, she has neither alleged nor argued in her multiple briefs that she was in an employer-employee relationship with any of them. Instead, her consistent assertion has been that they too, like her actual employer Care Givers, LLC, have similar ownership, management, and policies.

At the heart of the economic reality test is control and dependence—the purported employer's control over the details of the service the worker renders, and the purported employee's dependence upon the business to which they render service. *Bartles v. Birmingham*, 332 U.S. 127, 130 (1947). And here, Hodges presented no evidence that the forty-two Beebe-related nursing homes—that she did not work for—somehow controlled the details of her service to Care Givers, LLC, or that she was somehow economically dependent on them.

Because Hodges has neither alleged nor shown through jurisdictional discovery that her alleged injury is traceable to the forty-two nursing homes she never worked for, Hodges lacks standing to include them in her collective action.

#### B. *Medico*

Naming Medico as a joint employer is even more tenuous. According to her own allegations, Medico sponsors the retirement plan for employees of the other named defendants and

15

owns the building ASI operates out of. Nowhere in her allegations—or evidence produced through jurisdictional discovery—does she suggest that Medico was somehow her employer. So it appears Hodges only named Medico because of its corporate relation to the other defendants. This evidence is simply not relevant. Thus, Hodges has failed to meet her burden to prove standing to sue Medico.

### C.    ASI

The only Moving Defendant that warrants a factor-by-factor discussion of the economic reality test is ASI.

This "test originates in the Supreme Court's holding that 'economic reality' should govern the determination of employer status under the FLSA." *Gray*, 673 F.3d at 355 (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)). While it is ultimately a totality of the circumstances test, the Fifth Circuit has laid out four factors to consider. These are "whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gray*, 673 F.3d at 355 (quoting *Williams*, 595 F.3d at 620).

Hodges has not alleged or produced evidence that ASI hired or fired her. The only evidence Hodges produced is a Department of Human Services (DHS) investigative report of another Beebe-family related nursing home, not Care Givers, LLC. That report suggested it was the "Regional Supervisor" who decided to terminate an employee. Hodges implies the regional supervisor had to be someone with ASI. So necessarily ASI must also exercise employee discipline over Care Givers, LLC employees like Hodges. But this Court cannot take that many leaps. As the Fifth Circuit has cautioned, "mere conclusory allegations and inferences are not

16

sufficient to prove the required linkage" between an employee and purported employer. *Id.* Notably, Hodges has not alleged that *she* as a Care Givers, LLC employee was directed to report to an ASI regional supervisor. Nor has she alleged she was ever subject to employee discipline by ASI.

The same is true for the supervision and control factor. Hodges hammers the evidence of similar employee policies and procedures across the Beebe-related network of nursing homes that she asserts originated from ASI. But as ASI points out, evidence that ASI "played some role in developing policies that applied to [Hodges]" does not rise to the level of showing ASI "itself played any role in applying and enforcing such policies against her." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1130 (N.D. Ill. 2017). "Cooperation between affiliates does not imply control." *Id. See also In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 471 (3d Cir. 2012) (equating providing manuals and guidelines to services provided by a third-party consultant). Similarly, naming ASI president Parkinson as the "Corporate Compliance Officer" for Medicare/Medicaid purposes is not evidence Parkinson exercised control over Hodges as her employer. And it not enough that, when Care Givers, LLC, faced investigation by the DHS, a "Regional Supervisor" provided remedial training. No doubt ASI helps the nursing homes it services navigate government compliance issues. But there is just no evidence from Hodges that Parkinson or any other ASI employee supervised *her* work, controlled *her* working conditions, or set *her* schedule.

The next factors are the rate-and-method-of-payment factor and the employment-record factor. As the payroll services provider, ASI necessarily and undeniably calculated paychecks from the information Care Givers, LLC, provided. It also maintained records on Care Givers, LLC employees. But providing human resources services like payroll and insurance does not make ASI

17

a joint employer or prove it exercised control over Hodges's employment. *E.g.*, *Moldenhauer v. Tazewell–Peking Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir.2008); *Aguirre v. SBC Comm'cns, Inc.*, Civ. A. No. H-05-3198, 2007 WL 2065187, at *3 (S.D. Tex. July 17, 2007); *Hopkins v. Texas Mast Climbers, L.L.C.*, Civ. A. No. H-04-1884, 2005 WL 3435033, at *4 (S.D. Tex. 2005). In *Hopkins*, the payroll services and staffing provider wrote the employee's checks. *Hopkins*, 2005 WL 3435033, at *1. But that did not transform it into an employer. *Id.* at *3. The facts revealed the employee had "never talked to anyone with [the payroll services] provider and [did] not know where the company was located." *Id.* at *1.

The same is true here. Hodges produced no evidence she communicated or interacted with anyone with ASI. Nor did she provide evidence she reported to ASI, received work directives from ASI, or much less knew ASI existed while employed at Care Givers, LLC. So there is no reason to doubt ASI is anything other than what it purports to be—an outsourced provider of human resource and compliance services for a network of nursing homes—and not, under the totality of the circumstances, Hodges's employer. Because ASI is not, as a matter of economic reality, Hodges's employer, Hodges lacks standing to bring an FLSA claim against it.

While Hodges decries Care Givers, LLC's contractual relationship with ASI as a means to avoid FLSA liability, there is simply no evidence the Beebe family has arranged their business affairs to avoid paying otherwise covered employees overtime. Case in point, Hodges's employer Care Givers, LLC will remain a defendant in this collective action. And it will be liable for actual and liquidated damages to Hodges and other class members if her claim prevails.

But Hodges cannot expand her claims and her class by dragging non-employers, in relationship with her employer, into her FLSA collective action. That's the whole reason the economic reality test exists. As the Second Circuit explained, "limiting FLSA liability to cases in

18

which defendants, based on the totality of the circumstances, *function as employers of the plaintiffs rather than mere business partners of plaintiffs' direct employer*," ensures that the FLSA "is not interpreted to subsume typical outsourcing relationships." *Zheng v. Liberty Apparel Co. Inc.*, 355 F. 3d 61, 76 (2d Cir. 2003) (emphasis added). "The 'economic reality' test, therefore, is intended to expose outsourcing relationships that lack a substantial economic purpose, but it is manifestly not intended to bring normal, strategically-oriented contracting schemes within the ambit of the FLSA." *Id.*

### Conclusion

Because Hodges lacks standing to bring her FLSA collective action against the Moving Defendants, their Motions to Dismiss [17, 18, 19] are **GRANTED**.

Specifically, the following defendants are hereby **DISMISSED**:

Administrative Systems, Inc.

Medico, LLC

Community Care Center of Thibodaux, LLC

Rankin Community Care Center, LLC

Pike Community Care Center, LLC

Community Care Center of Laurel, LLC

Copiah Community Care Center, LLC

Community Care Center of Covington, LLC

Kenter, LLC

Gulfport Healthcare, LLC

Community Care Center of Vicksburg, LLC

Community Care Center of Heritage House, LLC

19

Community Care Cetner of Houma, LLC

Community Care Center of Mandeville, LLC

Heritage Manor Stratmore Nursing & Rehabilitation, LLC

Opelousas Healthcare Properties, LLC

Heritage Manor of Slidell, LLC

Community Care Center of Shreveport South, LLC

Community Care Center of Ville Platte, LLC

Heritage Manor West, LLC

Madison Community Care Center, LLC

Magee Community Care Center, LLC

Community Care Center of St. Martinville, LLC

Landmark Heritage, LLC

Collins Community Care Center, LLC

Desoto Community Care Center, LLC

Community Care Center of Hammond, LLC

Lake Charles Healthcare, LLC

Landmark of Plaquemine, LLC

Landmark of Rayne, LLC

Community Care Center of Baton Rouge, LLC

Monticello Community Care Center, LLC

American Legacy Properties, LLC

Lexington House, LLC

Versailles Healthcare, LLC

Oaks of Houma Community Care Center, LLC

Community Care Center of Destrehan, LLC

Perry Community Care Center, LLC

Community Care Center of Opelousas, LLC

Southern Hills, LLC

Columbia Community Care Center, LLC

Alexandria Healthcare, LLC

Minden Community Care Center, LLC

Lamar Community Care Center, LLC

**SO ORDERED** this, the 27th day of May, 2026.


    /s/James D. Maxwell II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI